CHARLES WORDEN

*v.*

HOWARD C. CRIST *et al.*

*Filed at Springfield March 29, 1883.*

1. SPECIFIC PERFORMANCE—*title of purchaser held in pledge by vendor to indemnify him as surety.* Where the purchaser of land, after having paid the purchase money so as to entitle himself to a deed, pledges the title, then in the hands of a third person, to his vendor, to indemnify the latter against loss as surety of the purchaser in another transaction, a specific performance will not be decreed until the debt for which the vendor is surety has been paid, and a decree granting a specific performance upon condition of the payment of such debt by a day fixed, and in default of such payment ordering the premises to be sold for such indebtedness, is not erroneous as to the party seeking such specific performance.

2. STATUTE OF FRAUDS—*pledge of title to land to indemnify surety— not in writing—the ninth section of the statute in relation to trusts, construed.* A purchased a tract of land and took a bond for a deed from B, the vendor. The premises had before been sold on the foreclosure of a prior mortgage, and to cut off a dower right in the wife of the mortgagor, B procured an assignment of the certificate of purchase to his son, who received a master's deed investing him with a clear, legal title, and A, after payment of the purchase money, procured B to become his surety upon a note for $1000, agreeing that the title might remain in B's son as an indemnity to B, until such note should be paid: *Held,* on bill by the assignee of A for specific performance, that the agreement respecting the holding of the title by B's son as an indemnity to the vendor was not within the Statute of Frauds, and was valid and binding, though not in writing.

3. The ninth section of the Statute of Frauds was intended to prevent persons holding the title to land from creating a trust, appointing a trustee, and declaring who should be the beneficiary, and declaring the terms of the trust in any other manner than in writing. It was not intended to prevent the holder of the legal title from agreeing with the holder of the equitable title upon other and different terms and conditions than those originally agreed upon, when the latter shall be entitled to a conveyance of the legal title. Such parties may verbally agree upon new terms for the conveyance of the legal title, or may rescind the contract altogether.

4. PURCHASER *of an equity—chargeable with notice.* A party purchasing only an equity takes it subject to all equities with which it may be encumbered. So, where a person takes an assignment of a bond for a deed after his assignor has pledged the title in the hands of a third person to

indemnify the maker of the bond as his surety, the assignee will take no better right or equity than his assignor had at the time of the assignment.

5. ERROR—*who may avail of it.* A party will not be allowed to avail himself of an error which does him no harm.

APPEAL from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Mr. WALTER M. HATCH, for the appellant:

Even if the oral agreement set up by the defence be considered established by the oral evidence, the agreement was and is void by the Statute of Frauds. It is directly in the teeth of the 9th section of said statute. Rev. Stat. chap. 59, secs. 2, 9.

All trusts in lands for third persons must be in writing, signed by the party creating the trust. *Smith* v. *Hallenbeck*, 51 Ill. 223; *Adams* v. *Adams*, 79 id. 517; Rev. Stat. chap. 60, sec. 9; *Hovey* v. *Holcomb*, 11 Ill. 660; *Perry* v. *McHenry*, 13 id. 227.

The Statute of Frauds is the plain law of the land, and it is the duty of courts to enforce it. *Hite* v. *Wells*, 17 Ill. 88; *Olt* v. *Lohnas*, 19 id. 576; *Gaddis* v. *Leeson*, 55 id. 83; *Albertson* v. *Ashton*, 102 id. 50.

The violation of a parol promise or trust, as to an interest in land, will not, of itself, constitute such a fraud as will take a case out of the Statute of Frauds. *Rogers* v. *Simmons et al.* 55 Ill. 76.

An oral contract or agreement, if void by the Statute of Frauds, can not be used as a defence any more than it can be used as a cause of action. Brown on Frauds, secs. 131, 133; *Comes* v. *Lamson*, 16 Conn. 246; *Scotten* v. *Brown*, 4 Harr. (Del.) 324; *King* v. *Wilson*, 5 Gray, 41.

Messrs. SPENCER, WELDON & McNULTA, for the appellees:

The appellant, Charles Worden, had notice of the rights, whatever they may be, of H. C. Crist, and can claim no higher equities than James Worden himself can claim.

The rights of appellees in this case are not embarrassed or arrested by the Statute of Frauds. The decree appealed from is more favorable to appellant than he was entitled to, and, therefore, he has no just ground of complaint. The decree as rendered does justice to the parties.

Mr. JUSTICE WALKER delivered the opinion of the Court:

About the 15th day of June, 1872, David L. Crist, claiming to own the tract of land in controversy, executed to James Worden a bond for a conveyance, upon his paying $502.80, on or before the 20th of May, 1873, and all taxes on the land. This was the balance of the purchase money on the lot. The bond provided, that if the money should be paid by that time the conveyance should be by general warranty, but if not, then by quitclaim deed. The land having been sold by the master in chancery to Alexander Campbell, Jr., on the foreclosure of a mortgage, and the redemption expiring on that day, it required the sum named in the bond to redeem, and it was designed to be used for that purpose. The certificate of purchase was in the hands of Williams & Burr, his attorneys, and the redemption was to be paid to them by arrangement between the parties, and they were to fill in the name of the person redeeming, in a blank assignment of the certificate. On the 16th day of May, 1872, four days before the payment fell due, Burr, for his firm, received from Worden $500 of the amount to be paid on the bond. He being absent, Crist called at the office of Williams & Burr the next day, and paid them $502.80, the full amount, and not knowing that Burr had, the day before, received the $500 from Worden, Howard C. Crist's name was inserted in the blank, and the certificate delivered to him. On the 24th of May, 1873, there was paid to Williams & Burr, $2.80 for Worden,—the balance of the sum named in the bond. The arrangement was to have a master's deed, to free the property from a claim of dower, and enable Crist to safely war-

rant the title. Subsequently, Howard C. Crist, the son of
David L. Crist, received a master's deed, and it was recorded.
On his return from Michigan, Worden paid the full amount
of the money to Crist advanced by him to obtain the assign-
ment of the certificate of purchase, but Howard C. refused
to convey by general warranty, but tendered a quitclaim
deed, which Worden refused to receive. Afterwards James
Worden sold and assigned Crist's bond for a conveyance to
complainant, who claims to have purchased without any
notice of any kind of defence. On receiving the assignment
of the bond he went into possession of the land, and has so
remained ever since. James Worden afterwards became a
bankrupt, and received a discharge from his debts.

These facts are not controverted. This of itself would
make a clear case for a specific performance. It is, how-
ever, set up and relied on as a defence, that James Worden,
before he assigned the bond, being desirous to borrow $1000
of the Home Bank, proposed to David L. Crist that if he
would become his surety for the amount, Howard C. might
hold the title, to indemnify him against liability to loss until
the amount should be paid; that this arrangement was con-
summated and the money borrowed, and that there has been
paid but $200 of the amount; that David L. Crist has died
testate, and defendant Howard C. became and is the executor
of his last will; that the note to the Home Bank has been
filed and allowed against the estate. And it is claimed that
Howard C. Crist, the executor, has a right, under that agree-
ment, to hold this security to indemnify the estate against
loss until complainant shall pay the debt.

It is urged that the evidence preponderates in favor of the
appellant, and that appellees failed to establish their defence
by the proofs heard on the trial. It is true James Worden
denies most explicitly that he ever made an arrangement with
D. L. Crist that Howard C. should hold the title to indemnify
him as surety on the note to the Home Bank. But Howard

C. testifies as positively and distinctly that the agreement was made, and states he was present and heard all that was said before his father and Worden went to the bank, and on their return they said he was to hold the title until the note was paid. His evidence is as positive as is that of James Worden. Again, Gill testifies most positively that James Worden admitted to him there was such an arrangement, stating in detail its terms. But it is insisted that these witnesses have a direct interest in the suit, and that James Worden's denial of the agreement should preponderate over their testimony,—that Worden is disinterested, and his evidence should therefore have the greater weight. It is true he testifies that he has no interest, but he stated to Gill that he could have had the deed before, but he preferred the title should remain as it was, because he had creditors. Nor does he or complainant testify complainant was not indebted to him in a sum sufficient to take up the Edwards note, claimed to be the consideration for the assignment of the bond, nor that James did not furnish appellant with the means to pay the note.

The fact that James Worden was financially embarrassed when he procured the loan from the Home Bank, the size of the loan, and the fact that Howard C. Crist held the title subject to his father's control, renders it more than probable that D. L. Crist would insist that the title should be held as it then was, to indemnify him, as a condition to his becoming surety for such an amount for a man in embarrassed and doubtful circumstances. Few men of prudence would have failed to avail themselves of the means of indemnity. This fact lends aid and strong support to the evidence of Howard C. and Gill, if one is an heir and the other the husband of another heir to the estate of D. L. Crist. We are unable to say that the court below found the facts contrary to the weight of evidence.

It is, however, claimed, that conceding the agreement was made as alleged, it not being in writing it was void

under the Statute of Frauds, which is relied on in the bill. This agreement was not for the sale of the property, or any interest therein, hence it does not fall within the letter of the second section of that statute, nor does it fall within the purview of that section. The manifest purpose of the second section was to prevent all sales of real estate, or an interest therein, for more than one year, unless the sale, or the agreement to sell, should be manifested by writing, signed by the seller. Here James Worden did not hold the title,—that was in Howard C. Crist, by a regular chain of title of record. Worden did not claim to hold the legal title, but an equitable title, that he could convert into a legal title at will. Nor was there any agreement to sell the property. The agreement purported only to permit the title to remain where it then was until the note should be paid,—to indemnify Worden's surety on the note. We are therefore wholly unable to see that the agreement falls within the provisions of the first or second section of the act. The cases referred to are unlike this, both in facts and principle.

It is, however, claimed that the agreement is condemned by the ninth section. It declares that all creations or declarations of express trusts shall be in writing, and it is urged that the agreement in this case was the creation or declaration of an express trust, and it is not in writing, and is therefore void. This is not of the character of trusts intended to be embraced in that section. It was intended to prevent persons holding the title to lands from creating a trust, appointing a trustee, and declaring who should be the beneficiary, and declaring the terms of the trust, in any other manner than in writing. It was not intended to prevent the holder of the legal title from agreeing with the holder of the equitable title upon other terms than those by which he was originally entitled to have a conveyance of the legal title. The statute was not intended to prevent parties thus situated to agree upon other and different terms from those

contained in the original agreement,—by express agreement
to vary, enlarge, diminish, or agree upon new terms for the
conveyance of the legal title.   That the parties by express
verbal agreement might have rescinded the contract, none
will, we presume, question or deny.   Had these parties by
mutual verbal agreement rescinded the contract, and the
consideration been restored, it would be monstrous to hold
that the purchaser could compel a conveyance under the
bond on proving he had paid the purchase money, and the
seller precluded under the statute from proving that after
the payment the contract had been rescinded, and the pur-
chase money returned to the purchaser.   It would work
great and palpable injustice to give the statute such a con-
struction.   It would open the door to greater and more
flagrant frauds than those intended to be suppressed.   If
parties thus situated may rescind such contracts by verbal
agreement, upon the same principle and for the same reason
they must have the power by mutual agreement, even by
parol, to change the terms of the contract and impose new
conditions.   Here the purchaser · procured the seller to be-
come his surety, by which he obtained money that he did
not, nor is it probable he will ever, pay, by agreeing the title
in Howard C. Crist should remain in pledge to indemnify the
seller against loss,—and as between them there can be no
question the agreement was valid.   Had the bond not been
assigned, and after this arrangement was made James Wor-
den had filed his bill for a specific performance, and the
agreement had been set up and proved, would it not have
shocked the sense of all men having the slightest sense of
justice to reject the defence and decree the relief?   No one
could justify such a decree.

 This, then, was the attitude of the parties to the bond
when it was assigned.   Did appellant take it in a better con-
dition than it was held by his assignor?   We think not.
Howard C. Crist owned or held the fee of record.   The bond

was not given by him, nor was there anything of record or any writing in existence binding him to convey the property to James Worden, or any one else.   Appellant should therefore have inquired of Howard C. before purchasing.   Had he done so he would have learned the true condition of the title and of this incumbrance.   He failed to do so, and has purchased an equity, and he took it subject to all equities with which it was incumbered.   He could, under the circumstances, acquire no greater or better right than his assignor held.

The court decreed that complainant pay the Home Bank the note given by him to it, and allowed against the estate of D. L. Crist, within three months, or in default thereof that the land be sold, and of the proceeds of the sale that claim shall be paid.   It is urged that this is error, as the court could not grant such relief on answer, but a cross-bill should have been filed to warrant that part of the decree.   Concede it was error, how can it operate to the prejudice of appellant? The decree gave him the power to redeem in the time specified, and on his failing to do so he would be foreclosed, and would lose all right or claim to the land, and when that right shall be lost it does not concern him what shall become of the land.   If there is error it is not such as appellant can be heard to urge.

We perceive no error in the record requiring a reversal, and the decree is affirmed.

*Decree affirmed.*