DANIEL L. JOHNSON, APPELLEE, v. BENJAMIN D. HAYWARD ET AL., APPELLANTS.*

FILED JUNE 8, 1905. No. 13,840.

1. **Real Estate Agents: CONTRACT: STATUTE OF FRAUDS.** A contract whereby one person employs an agent to negotiate for the purchase of real estate is not a contract for the creation of an estate

*Rehearing allowed. See opinion, p. 166, *post.*

or interest in land, or trust or power over or concerning lands, etc., within the meaning of the statute of frauds.

2. **Principal and Agent:** TRUSTS. Where one employed to act as the agent for another in the purchase of real estate becomes the purchaser himself, he will be considered in equity as holding the property in trust for his principal, although he purchased with his own money, subject to reimbursement for his proper expenditures in that behalf.

3. **Title to Land:** EQUITY. The maxim "prior in time, prior in right," applied in a contest between rival claimants under equitable titles to real estate.

4. **Evidence** examined, and *held* sufficient to sustain the findings and decree of the trial court.

APPEAL from the district court for Howard county: JAMES N. PAUL, JUDGE. *Affirmed.*

*T. T. Bell, F. J. Taylor* and *M. B. Reese,* for appellants.

*D. L. Johnson, A. A. Kendall* and *O. A. Abbott, contra.*

ALBERT, C.

In this suit the plaintiff seeks to have a trust declared and enforced with respect to certain real estate. The pleadings are unnecessarily voluminous, covering some 35 pages of the record. Reduced to their simplest form, the ultimate facts relied upon by the plaintiff to entitle him to the relief sought are: That the defendant, Benjamin D. Hayward, while under an oral contract of agency with the plaintiff to negotiate on behalf of the plaintiff for the purchase of certain real estate, negotiated therefor and bought the same for his own use and benefit, taking the title thereto in the name of the defendant Day, his nephew, who later conveyed to the defendant Mary F. Hayward, the wife of defendant Benjamin D. Hayward, in trust and for the use of her said husband; that afterwards, the defendants Mary F. Hayward and Benjamin D. Hayward borrowed $1,200 of the defendant Paul, and as security therefor deposited the conveyance of the land from Day to Mary F. Hayward, which had not been re-

corded; afterwards, Benjamin D. Hayward, acting as the agent of his wife, entered into a written contract with the defendant Mathiason for a sale of the land to the latter for $2,700, receiving on the purchase price $500; that afterwards, Mathiason entered into a written contract with the defendant Kohler for the sale of the land to the latter for $3,000, upon which there was paid $500. The court found for the plaintiff, took an account of the expenditures and charges of defendant Benjamin D. Hayward in the premises, of the amount due on the Paul mortgage, and the amount due Kohler on account of the $500 paid by him on his contract with Mathiason, and entered a decree requiring a conveyance of the land to the plaintiff upon payment of the amount found due Benjamin D. Hayward, and made such order for the distribution of the proceeds of said payment as would protect the defendants Paul and Kohler as to the money by them respectively advanced on the land. The case is here on defendant's appeal, the defendant Paul not participating.

The contract of agency upon which the plaintiff relies rests wholly in parol, and no part of the consideration which the agent Hayward paid for the land was advanced by the plaintiff, and the principal contention of the defendants in this case is that it falls within the provisions of section 3 of our statute of frauds (ch. 32, Comp. St.), which is as follows: "No estate or interest in land, other than leases for a term not exceeding one year from the making thereof, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same." Among other authorities supporting this contention are the following: *Burden v. Sheridan,* 36 Ia. 125; 2 Story, Equity Jurisprudence (13th ed.), secs. 1201, 1201a; 1 Perry, Trusts (5th ed.), sec. 135. The Iowa case just cited deserves more than a passing notice, because it is

hardly distinguishable on principle from the case at bar.
As in this case the contract of agency was oral, and the
principal had advanced no part of the consideration for
the land. The court held that the contract, being oral,
came within the section of the statute of frauds of that
state corresponding with that section of our own statute
just quoted, and that, no part of the consideration having
been paid by the principal, the case did not fall within
another provision, which provides that the section referred
to shall not apply where the purchase money, or any por-
tion thereof, has been received by the vendor. In the ab-
sence of an express statutory provision, part payment of
the purchase price in and of itself is not regarded as such
part performance of an oral contract as will relieve against
the statute. It seems to us that in the defendants' argu-
ment, as well as in the authorities cited in support of it,
there is a failure to distinguish between those cases where
an estate or interest in land, or some trust or power over
or concerning lands, is one of the considerations of the con-
tract, and is acquired as a direct result thereof, and those
where such estate, interest, trust or power is not such con-
sideration, and is not acquired as a direct result of the
contract, but which arises as a remote result of the con-
tract and from an abuse of the relations thereby estab-
lished. It is not claimed by the plaintiff that at the time
he made his contract with Hayward he thereby acquired
any title, legal or equitable, to the land, or that any trust
or power over or concerning the land was thereby created.
On the contrary, the most he claims for that contract is
that it created between him and Hayward the relation of
principal and agent. The land itself, or any interest or
trust or power over and concerning the land, was no part
of the consideration moving from either party to the other.
The consideration which the plaintiff agreed to pay was
the value of Hayward's service, and the consideration
moving from Hayward was the service he undertook to
render as the plaintiff's agent. That an oral contract
creating an agency, although for the purchase or sale of

real estate, is valid, is clearly established by the authorities. In one of the head-notes to *Griffith v. Woolworth*, 28 Neb. 715, the rule is laid down that "where a land owner employs an agent to procure a purchaser for his real estate upon certain terms and conditions, the contract of employment need not be in writing." This was regarded as the settled law of this state up to the time of enactment of section 74, chapter 73, Compiled Statutes (Ann. St. 10258), which took effect April 12, 1897, requiring every contract for the sale of land between the owner thereof and any broker or agent to sell the same to be in writing. There is no similar provision in regard to contracts for the purchase of real estate by agents. In the absence of a statute like the above, there is no such difference in principle between a contract with an agent to negotiate a sale and one to negotiate a purchase, as would make one fall within section 3 of the statute of frauds, and the other without. That the former does not fall within the statute of frauds was the view of this court in *Griffith v. Woolworth, supra,* and this view was recognized as sound, and acted upon by the legislature by the enactment of sec. 74, *supra,* otherwise there was no necessity for the enactment of that section. That an oral contract for the employment of an agent to buy or sell land is not within the statute of frauds is settled by a long line of authorities, which are collated in 29 Am. & Eng. Ency. Law (2d ed.), 892.

If then it be competent, and we are clearly of the opinion that it is, to establish the contract of agency by parol testimony, the question then arises whether parol testimony is competent to establish the trust in this case, or whether the plaintiff will be relegated to his remedy at law for damages for breach of contract. Section 4 of our statute of frauds expressly provides that section 3 shall not be construed to prevent any trust from arising or being extinguished by implication or operation of law. A similar provision exists in all the states. This provision includes all resulting and constructive trusts, or it might be said,

14

it includes all trusts which are not created by the express terms of a contract. In this case, the plaintiff is not seeking to enforce an express trust. He is seeking to enforce what he claims is a trust which arises or results from an abuse of the confidential relations existing between him and the defendant Hayward, by virtue of their contract of agency. The rule is well settled that an agent instructed to purchase property for his principal will not be permitted, without his principal's knowledge and consent, to become the purchaser of the same property for himself; and if he makes such purchase, he will, although he purchased with his own money, be considered as holding the property in trust for his principal, and the latter upon repaying or tendering him the amount of the purchase price and his reasonable compensation, may by proper proceeding in equity compel a conveyance to himself. Mechem, Agency, sec. 457.

The case of *Rose v. Hayden,* 35 Kan. 106, like this case, was brought to enforce a trust in property which the plaintiff had bought in his own name and for his own use, while bound by an oral contract to purchase it for the plaintiff. The plaintiff had paid no part of the consideration. There the court discussed the statute of frauds as affecting cases of this kind at length, and held that the statute does not apply, and that the trust should be enforced. The case contains an interesting review of the leading authorities in this class of cases. Among the authorities cited is *Jenkins v. Eldredge,* 3 Story (U. S. C. C.), 181, 289, which was reported after the text from Story, *supra,* was written. In that case the learned judge says:

"It appears to me, that here a confidential relation of principal and agent did exist; and that being once shown, it disables the party from insisting upon the objection, that the trust is void, as being by parol. The very confidential relation of principal and agent has been treated, as for this purpose, a case *sui generis.* It is deemed a fraud for an agent to avail himself of his confidential relation to drive a bargain, or create an interest adverse

to that of his principal in the transaction; and that fraud creates a trust, even when the agency itself may be, nay must be, only by parol. *Bartlett v. Pickersgill,* 1 Eden (Eng.), 515; 1 Cox, Ch. (Eng.) 15; 4 East (Eng.), 577, note, and *Leman v. Whitely,* 4 Russ. (Eng.) *423, are, I admit, against this doctrine—not wholly, but to a limited extent; for the latter case excludes a case of fraud. But then *Lees v. Nuttall,* 1 Russ. & M. (Eng.), 53, expressly decides, that if an agent employed to purchase an estate, purchase for himself and on his own account, he becomes a trustee for the principal. In that case the whole agency and trust was made out by parol, and the purchase was from a third person. *Carter v. Palmer,* 1 Bligh (Eng.), 397, 418, goes the full length of the same proposition."

Section 4 of our statute of frauds, as we have seen, expressly excepts from the operation of section 3 trusts which arise by implication or operation of law. In our opinion, the trust sought to be enforced in this case falls within that exception, and should be enforced. We are aware, as will be seen from the foregoing, that there are authorities holding a contrary doctrine, but the reasoning upon which they are based is unsatisfactory, and contrary, we think, to the fundamental maxims of equity.

It is insisted that the evidence is insufficient to sustain a finding of any contract of agency between the plaintiff and Hayward. To set out the evidence on this point would unduly extend this opinion, and after set out, the most that could be urged in behalf of the defendants would be that it is conflicting. The witnesses were before the trial court; that gave such court advantages in weighing their testimony which we do not possess, and even without allowing for that advantage, we should hesitate, in view of the entire record, to hold that the evidence is not sufficient to sustain the finding. In this connection our attention is called to the fact that the plaintiff leased the land from the defendant Day after the latter had acquired the legal title. This fact, if unexplained, would

tell heavily against the plaintiff. But his explanation is that Hayward told him that Day had offered the owners $1,500 for the land, that being $100 more than the plaintiff had offered; that his offer had been accepted, and that he had got the land, when, in truth, Day's purchase had been negotiated by Hayward, and the land was sold to him on the exact terms plaintiff had authorized Hayway to buy it for him. Believing that the land had been sold to Day in good faith, plaintiff leased the land from Day. This explanation is not unreasonable, and the fact of the leasing, as thus explained, is not inconsistent with plaintiff's present claim.

It is also urged that at the time the contract of agency was made, plaintiff knew that Hayward had the land for sale as the agent of the owner. It is not quite clear that Hayward was the agent for the owner of the land, but it does appear that he had listed it for sale at the request of a company which apparently was acting as agent of the owner, and plaintiff knew that fact. But it also appears that at the time plaintiff employed Hayward, he asked him, pointedly, whether there was any reason why he could not act for him in the purchase of the land, and was assured by Hayward that there was none. In the face of this statement we think the plaintiff had a right to assume that there was nothing in the terms on which the lands were listed with Hayward that would be inconsistent with Hayward's acting for him in negotiating a purchase of the land. The mere listing of property with a broker for sale does not necessarily constitute the broker the owner's agent to make the sale; under such circumstances the broker is frequently, and with perfect propriety, the agent, not of the owner, but of the purchaser.

It is strenuously urged that both Day and Mrs. Hayward are innocent purchasers, and took their respective titles in good faith, and not in trust for Benjamin D. Hayward. Day never advanced but $100 of the purchase price. He never saw the land, and his contract therefor

was kept in the safe of his uncle Benjamin D. Hayward When the time came to take his deed, he decided not to take the land, and his $100 was returned to him in the form of a check from his said uncle. About one month later, he quitclaimed to Mrs. Hayward, his aunt, and the wife of Benjamin D. Hayward. As we have seen, the $100 paid Day for his relinquishment came from his uncle; the rest of the money required for Mrs. Hayward's purchase was borrowed on the joint note of herself and her said husband; the money thus raised was deposited in the bank to the credit of the husband, and checked out to pay for the land by him and in his own name. In short, the husband, Benjamin D. Hayward, seems to be the central figure in all these several family transactions. From all the facts and circumstances we think the trial court was warranted in finding that Day and Mrs. Hayward were mere instrumentalities employed by Benjamin D. Hayward to hold the beneficial title to the property to his own use.

Another contention of the defendants is that Mathiason and Kohler, respectively, are innocent purchasers, and are entitled to hold the land as against the plaintiff. So far as the money paid by them, or either of them, is concerned, they are fully protected by the decree. Mathiason had already transferred his interest to Kohler, and the decree affects Kohler only in so far as it requires the conveyance of the land to the plaintiff, instead of to him. The decree provides for the payment to him of the amount he had invested in the land. But neither Mathiason nor Kohler come under the general rule applicable to innocent purchasers. Neither of them had any legal title. Whatever title they had was purely equitable. It is a familiar rule of equity that where the equities are equal, that which is prior in point of time shall prevail. Elaborating on that rule in *Boone v. Chiles*, 10 Peters (U. S.), 176, the court say:

"A purchaser with notice may protect himself under a purchaser by deed without notice; but cannot do it by

purchase from one who holds or claims by contract only; the cases are wholly distinct. In the former, the purchaser with notice is protected; in the latter, he has no standing in equity, for an obvious reason—that the plaintiff's elder equity shall prevail, unless the defendant can shelter himself under the legal title, acquired by one whose conscience was not affected with fraud or notice, and who can impart his immunity to a guilty purchaser, as the representative of his legal rights, fairly acquired by deed, in such a manner as exempts him from the jurisdiction of court of equity."

To the same effect are the following: *Smith v. Orton,* 18 L. ed. (U. S.) 62; *Woods v. Dille,* 11 Ohio, 455; *Anketel v. Converse,* 17 Ohio St. 11; *Worden v. Crist,* 106 Ill. 326.

As the plaintiff in this cause was first in time, under the well known maxim of equity, he must be held to be first in right.

In our opinion, the decree of the district court is just and equitable, and ought to be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.

The following opinion on rehearing was filed April 5, 1906. *Judgment of affirmance adhered to:*

A broker whose undertaking merely is to find a purchaser at a price fixed by the seller, or at a price which shall be satisfactory to the seller when he and the purchaser meet, is in reality only a middleman, whose duty is performed when the buyer and seller are brought together.

DUFFIE, C.

Because of Johnson's knowledge that Hayward was acting for the Fidelity Trust Company of Kansas City,

and had this land listed on his books when the offer of
$1,400 was forwarded to the company, we had doubts
whether Johnson ought to rely upon Hayward's rep-
resenting him in the transaction, and therefore recom-
mended a rehearing in the case.   If, at the time Johnson
employed Hayward, he knew that the latter was already
acting as agent for another in the sale of this land, then
he had knowledge that Hayward could not properly act
for him in the capacity of agent, and ordinarily would
have no right to rely upon his doing so.   It was upon this
ground alone that a rehearing was allowed, and not be-
cause we had any doubts of the correctness of our former
opinion upon the other questions involved.   In order that
this phase of the case may be understood, it will be neces-
sary to state some facts not set out in the former opinion.

In 1900 the plaintiff's wife owned the northeast quar-
ter of section 15, township 16, range 10 west, in Howard
county, Nebraska.   He bought of the owners of the fee
the adjoining northwest quarter of section 14, 145 acres of
which was subject to a mortgage held by one Newton.
This mortgage was in process of foreclosure, a decree
having been entered for $1,577.14, a sum in excess of the
real value of the land at that date.   Johnson desired this
land, and was seeking the owner of the mortgage for the
double purpose of saving the expense of a sale on the
decree of foreclosure and of purchasing the mortgagee's
right in the decree at what would be the fair cash value
of the land.   He was not able to get into communication
with the parties representing Newton, and a sale under
the decree took place, Newton being the purchaser and
receiving the sheriff's deed.   The conditions then existing
were these:   Johnson's wife owned the northeast quarter
of section 15, Newton the west 145 acres of the north-
west quarter of section 14 adjoining her on the east, and
Johnson the east 15 acres of the northwest quarter of
section 14, Newton's 145 acres lying between the land
owned by Johnson and Mrs. Johnson.   Johnson desired
the whole half-section, and in order to obtain time in

which to find and communicate with Newton's represent-
atives, Johnson set out to appeal from the decree of con-
firmation in the foreclosure case. Hayward, who had
been his agent in all his other matters in Howard county
up to this time, had been appointed guardian *ad litem* for
one of the minor defendants in the foreclosure proceed-
ings, and, knowing this, Johnson employed another at-
torney, one Nunn, to prosecute his appeal. Sometime
after the foreclosure sale, Johnson and Hayward were
driving in the country, and, the matter of the foreclosure
coming up, Hayward informed Johnson that he was not
attorney for the plaintiff, and thereupon Johnson em-
ployed him to assist Nunn in the appeal to the supreme
court. This conversation and employment is denied by
Hayward, but is conclusively established by his own let-
ters to Johnson, upon whom he drew for funds to defray
the expense of the appeal, as well also as by the testimony
of Nunn. Under date of January 9, 1901, Hayward wrote
Johnson: "There are no appeal bonds here  *  *  *  but
if you desire I will prepare one and send to you." Janu-
ary 18 he wrote: "Bond in case of *Newton v. McCracken*
received, and filed as of this date. Also approved." Feb-
ruary 12 he wrote as follows: "In case of *Newton v. Mc-
Cracken* the transcript has been made and served.  *  *  *
You can send on these costs, and we will get the matter
started." February 27 he wrote: "Do you want the bill
of exceptions made in *Newton v. McCracken?* It will
have to be done on the 10th inst. Wire answer tonight."
March 20 he wrote the following: "I will file the case of
*Newton v. McCracken* in the supreme court at once, and
have drawn on you for $20, for costs, as per your tele-
gram."

That he was acting as Johnson's attorney in the appeal
cannot be doubted, however strongly he may deny the
fact. Previous to the time when the appeal should be
perfected, Johnson, who lived in Omaha, was called to
Alaska, and did not return until sometime in August.
Hayward, who had received the money to perfect the ap-

peal, neglected to file the papers, and the appeal failed. A deed was issued to Newton, the purchaser at the sheriff's sale. After Johnson's return from Alaska, he learned from Hayward that the appeal had not been perfected, and also that the Fidelity Trust Company of Kansas City had charge of the land. During all the time previous to this, Hayward had been Johnson's attorney in his efforts to secure this land, and to find someone who had authority to deal with it. On learning that the land was in the hands of the Fidelity Trust Company, Johnson asked Hayward if he was in a position to represent him in the purchase of the land, and Hayward replied that he was. Johnson then said to him: "Make them an offer of $1,400. Send it by wire, and get a reply this afternoon before I leave for Omaha." Hayward wired the offer to the Fidelity Company, as follows: "9-21-01. Have offer $1,400 cash McCracken land. Wire answer today." The Fidelity Company wrote in reply as follows: "We have your telegram of today reading 'Have offer $1,400 cash McCracken land. Wire answer today.' We immediately upon receipt of your wire wired the owner advising him of the offer, and recommending acceptance. It is possible we may get a reply from him before the close of business, which is at one o'clock on Saturday; and if so, we will promptly advise you. If, however, the message is not received until later, we will advise you promptly Monday morning, or as soon as the message comes to hand." Newton, in the meantime, had become insane, and nothing further was done in the matter until November 19, 1901, when Fred C. Gowing, guardian for Newton, wrote the Fidelity Company as follows: "023,906. McCracken, held by Hiram C. Newton of Troy, N. H., I find needs attention, as I have just become his guardian as he has had a long sickness and has become insane. If the party will take the property now at the $1,400, I will forward the necessary papers, if you will tell what form will be required." November 21, 1901, the Fidelity company wrote Hayward asking if it would be possible to secure a re-

newal of the offer of $1,400 cash for the property, and advising him that the offer would be accepted. And on the 26th of November Hayward wired the Fidelity Company as follows: "Have sold McCracken, $1,400 cash. Wire acceptance." In the meantime, and on October 3d, 1901, Hayward had written Johnson as follows: "D. L. Johnson, Omaha, Nebraska. I have had no reply thus far relative to the offer on the McCracken land. I wrote them again Monday, and expect an answer of some kind soon. I do not understand the delay. As soon as I hear I will write you. Yours, B. D. Hayward."

Hayward now says that the second offer made the Fidelity Trust Company of $1,400 for the land was made on behalf of Day, but in the meantime he had led Johnson to believe that he was acting for him in the purchase. It clearly appears from the facts above stated that Hayward had no authority to make a sale of this land. At the most his employment by the Fidelity Trust Company was to act as a middleman to secure offers on the land and to bring the parties together.

Let us see how the matter stood when the pretended sale was made to Day. Newton had become insane, and a guardian of his person and estate had been appointed. This terminated the agency of the Fidelity Company for Newton. The guardian employed that company to obtain a renewal of the offer of $1,400 for the land, and the company employed Hayward for the same purpose. The company and Hayward were not agents in the full sense of that term; they were middlemen to secure from a former proposed purchaser the renewal of a former offer made for the land. They come fully within the definition of Chief Justice Dixon in *Stewart v. Mather*, 32 Wis. 344, where he says: "A broker whose undertaking merely is to find a purchaser at a price fixed by the seller, or at a price which shall be satisfactory to the seller when he and the purchaser meet, is in reality only a 'middleman,' whose duty is performed when the buyer and seller are brought together." The case comes fully within the rule

announced in that case and followed in *Barry v. Schmidt*, 57 Wis. 172, 46 Am. R. 35. But if we admit that Hayward was agent of the Fidelity Company in the fullest sense of that word, still he had been employed by Johnson long prior to his engagement by the company, and his services and his duty were due to Johnson, and not to the company who afterwards employed him in the same matter. It is true that Hayward, if his employment by the company required of him the exercise of any judgment relating to the price to be asked for the land or the character of the proposed purchaser, should have informed it of his employment by Johnson to purchase for him; but that Johnson owed the company any such duty, or that he should have refused to continue Hayward as his agent on learning that the land had been listed with him, is not demanded by any rule of law or morals. Hayward, as Johnson's agent, owed him the duty of honesty and fidelity in the business for which he was employed. If he wished to become owner of the land, he should at least have informed his principal that he could no longer act for him in the matter, and place him in a position where he could have protected his interest by his own efforts or by employing another agent, and we doubt, even had he renounced his employment, whether the law would have allowed him to become a purchaser of the property without Johnson's consent, for, as well said by Judge Sanborn in *Trice v. Comstock*, 121 Fed. 620: "Wherever one person is placed in such a relation to another by the act or consent of that other, or by the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is in such a fiduciary relation with him that he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated." We recommend that the former opinion be adhered to.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former opinion is adhered to.

AFFIRMED.