## Staunton.

## MATNEY AND OTHERS V. YATES AND OTHERS.

### September 20, 1917.

1. APPEAL AND ERROR—*Amendment—Record—Objections in Court Below.*—An order was entered at the August term of the lower court, reciting that an amended bill was filed by leave of court, and while the record indicated that it was not in fact filed until September following, this discrepancy, though indirectly adverted to, in the brief of counsel, was immaterial, as the amended bill was recognized and passed upon by the court at a still later term, and no objection based upon the time of filing, and no question as to the identity of the amendment, appeared anywhere in the record.

2. APPEAL AND ERROR—*Final Judgments and Decrees.*—A decree sustained the demurrer of one defendant to a bill and adjudged, ordered and decreed that the bill of complainants be remanded to rules to be matured as to the other defendants. At the next term, an amended bill was filed by leave of court, to which the defendant, whose demurrer had been sustained, objected on the ground that the decree was a final decree, and ended the case as to him, so that he was not affected by the leave given to file the amendment.

   *Held:* That the objection was without merit.

3. LOST INSTRUMENTS AND RECORDS—*Bill in Equity to Set Up Lost Deed.*—A bill attempting to set up a lost deed alleged that all the parties who were connected with, and who knew anything about, the transaction, were dead, and that complainants were unable to prove that the deed was in fact made.

   *Held:* That the court could not entertain a case, which, in the outset, the complainants admitted they would be unable to support by proof when the burden of proof was upon them to do so.

4. JUDGMENTS AND DECREES—*Vacation.*—Section 3293 of the Code of 1904, giving the court "control over all proceedings in the office during the preceding vacation," has no application to vacation decrees entered pursuant to provisions of section

3427 of the Code of 1904, providing for the submission of motions, actions at law and chancery causes for decision in vacation.

5. REVIEW—*Petition for Rehearing.*—An erroneous petition for rehearing, where the court by entering a final decree in vacation had lost control of the cause, may be treated as a bill of review, where it plainly sought to correct an error of law apparent upon the face of the record, and was, in substance, a bill of review, which is the appropriate proceeding for the correction of a final decree by the court in which it has been rendered.

6. MULTIFARIOUSNESS.—Where a bill had a single, ultimate object in view, namely, to perfect the record title to land, which complainants claimed they owned in fee simple, and sought to attain this purpose, first, by establishing a lost deed, and secondly, by obtaining release deeds from other claimants, there was nothing inconsistent in attempting to accomplish this single purpose in either of the two ways indicated in the bill, and therefore the bill was not multifarious.

7. TRUSTS—*Establishment—Interest of Complainant.*—A bill that alleges that complainants are claiming the ownership of a tract of land as successors in title of the original owners, whom they have succeeded in possession of the land, shows a substantial and sufficient interest in the land in controversy, in a suit to establish a constructive trust in defendant for the benefit of complainants.

8. PRINCIPAL AND AGENT—*Constructive Trusts.*—An agent may not purchase land in his own name for the benefit of his principal and then refuse to convey the same in accordance with his contract, but in such case will be held as a constructive trustee.

9. FRAUDS, STATUTE OF—*Resulting Trusts—Agency.*—Where a principal, having no interest in the land to be purchased, makes a verbal contract with an agent to buy for him, and the latter purchases in his own name and with his own funds and then repudiates the agency and refuses to convey to the principal, the question whether the contract is within the statute of frauds and not enforceable against the agent, depends upon whether the contract in its essence and effect was one of agency, or was it one for the purchase of real estate. If it was the former, it creates a trust relation, is not within the statute of frauds, and can be established by parol; if the latter, the parties are to that extent dealing with each other as principals and the contract is within the statute and can only be established by such a writing as will meet the requirements thereof.

10. FRAUDS, STATUTE OF—*Resulting Trusts—Agency.*—Where the principal has a present interest in the land, and only employed the agent to purchase an adverse or outstanding title for the purpose of bolstering up or protecting the principal's own title, irrespective of whether the outstanding title was good or bad, the agent has been held a constructive trustee when he purchased the title in his own name, paying therefor with his own money.

11. CONSTRUCTIVE TRUSTS—*Agent Taking Title in His Own Name.*—Where it is sought to establish that an agent to purchase land is a constructive trustee of his principal, the relationship of principal and agent should be established by clear and convincing proof.

12. MULTIFARIOUSNESS—*Multiplicity of Suits.*—It is the policy of the law to avoid a multiplicity of suits, and to reject the objection for multifariousness where there is no liability to injustice.

13. MULTIFARIOUSNESS—*Demurrer Sustained as to One Branch of the Case.*—Where the trial court sustained a demurrer and entertained an amendment which showed that the complainants were bound to fail in their proof upon one branch of their case, it was error to dismiss the bill for multifariousness. The court ought to have treated as surplusage the allegations relating to this branch of the case or ought to have reserved to complainants the right to amend by striking out these allegations.

14. JUDGMENTS AND DECREES—*Vacation.*—Final decrees in vacation ought to guard against cutting off the opportunity for amendment.

Appeal from a decree of the Circuit Court of Buchanan county. Decree for defendant. Complainant's appeal.

*Reversed.*

The opinion states the case.

*Geo. W. St. Clair* and *J. H. Stinson,* for the appellants.

*Chas. & Daugherty,* for the appellees.

*Kelly, J.,* delivered the opinion of the court.

The appellants, John H. Matney and J. H. Stinson, filed an original bill, the particular allegations of which, so far as necessary for this statement, may be briefly and substantially set out as follows:

That Walter Matney and Richard Yates acquired jointly and in fee simple by grant from the Commonwealth two certain tracts of land in Buchanan county, containing respectively 241 and 166 acres; that subsequently, in the year 1879, these patentees made an oral partition whereby Walter Matney was allotted the 241 acres and Richard Yates the 166 acres, and the parties took possession of their respective tracts, which they, and those claiming under them, have ever since held; that Matney and Yates made deeds to each other, confirming the partition, which were duly executed, delivered and recorded, but the original deeds and the records thereof were destroyed by fire in the year 1885; that complainants under numerous mesne conveyances acquired title to the Walter Matney 241-acre tract (less a portion of the coal and minerals) ; that the names of all the heirs of Walter Matney and Richard Yates and all the facts, transactions and conveyances having any effect, real or apparent, upon the title to both tracts of land were as particularly set out in the bill; that because complainants' evidence of title had been destroyed by fire they had entered into a contract with Richard Yates, Jr. (more fully set out in a subsequent paragraph of this opinion), whereby the said Yates, Jr., agreed to obtain releases for them from all the heirs of Richard Yates, Sr.; that Yates, Jr., proceeded to procure releases in his own name, and thereafter violated his contract, and committed a breach of trust by continuing to hold the title in his own name, refusing to make any conveyance to the complainants.

The bill prayed that a commissioner be appointed to make deeds to the present owners in lieu of the deeds that had been destroyed, and, further, that Richard Yates, Jr., be

required to execute to the present owners of the 241 acres a release deed for all the right, title and interest acquired by him from the heirs of Richard Yates, Sr. There was also the usual prayer for general relief.

To this bill the appellee, Richard Yates, demurred, stating in writing forty grounds for his demurrer, and the circuit court, on April 29, 1914, entered a decree which concluded as follows:

"The court is of opinion that the grounds of demurrer are well taken, doth sustain said demurrer, and adjudge, order and decree that the bill of complainants be remanded to rules to be matured as to the C. L. Ritter Lumber Company, Inc., and the Yellow Poplar Lumber Company, Inc."

At the next term of the court, in August, 1914, an order was entered reciting that an amended bill was filed by leave of court, and while the record indicates that it was not in fact filed until September following, this discrepancy, though indirectly adverted to in_ the brief of counsel for defendant Yates, is immaterial, as the amended bill is recognized and passed upon by the court at a still later term, and no objection based upon the time of filing, and no question as to the identity of the amendment, appears anywhere in the record. An objection, however, was made to the amended bill by Richard Yates on the ground that the decree of April 29, 1914, quoted above, was a final decree, and ended the case as to him, so that he was not affected by the leave given to file the amendment. The court did not pass upon that objection, but a mere reading of the language of the decree shows that the objection was wholly without merit. Yates then demurred to the amended bill, and by consent of parties by counsel, the court took the cause for decision in vacation.

The amended bill did not differ very materially from the original, except in the important qualification made in the allegation relating to the deeds confirming the oral parti-

tion between Walter Matney and Richard Yates. The amended allegation upon this point was as follows: "Your orators have been informed, and are advised, that the said Richard Yates made a deed conveying all his right, title and interest in and to the said 241-acre tract of land to Walter Matney, but of this your orators cannot be positive, as all the parties who were connected with, and who knew anything about the transaction, are dead, and your orators are unable to prove that this deed was in fact made." This allegation, in our opinion, eliminates entirely that branch of the case which attempts to set up the lost deed, and renders unnecessary any discussion or consideration of the multitudinous questions raised by the demurrers to the original and amended bill, regarding the sufficiency of the allegations looking to such relief. Whether the bills are in other respects sufficient to meet the requirements of section 2361 of the Code, with reference to which they seem to have been framed, we need not stop to inquire, since it is readily apparent that the court could not entertain a case which in the outset the complainants admitted they would be unable to support by proof when the burden was upon them to do so. This weakness in the amended bill was the subject of one of the thirteen grounds of demurrer thereto, and while we think the circuit court committed error in the final disposition of the cause, it was clearly right in refusing to grant relief upon the theory of a lost deed.

On April 18, 1915, the court, proceeding to hear the cause in vacation, entered a decree to the following effect:

"The court doth sustain the demurrer of Richard Yates, and hereby dismisses the original and amended bills as to him, the court being of opinion that the facts as stated in the two bills do not constitute and set up a resulting trust, or any trust, as to Richard Yates, and is also of opinion that the bill is multifarious, and inasmuch as the said bill

is multifarious, the court doth dismiss this suit, and direct that the same be left from the docket, and that the defendant, Richard Yates, recover his costs."

At the succeeding term of the court, beginning in July, 1915, the appellants, Matney and Stinson, filed what they called a petition to rehear the cause, and with their petition exhibited a second amended bill, which sought to meet the view of the court that the bill was multifarious by eliminating entirely all allegations except such as were deemed necessary by the complainants to make out a case against Richard Yates as a constructive trustee, and entitle them to a decree requiring him to convey to them such title as he had obtained from the heirs of Richard Yates. The record contains a recital, apparently a copy of some endorsement or entry made by the clerk in the course of the proceedings in the lower court, to the effect that this petition for rehearing and the amended bill accompanying same, were filed in open court and by leave of court. No objection appears to have been made to them at that time, and a decree was entered reciting the filing of the same, and granting Richard Yates, upon his motion, sixty days' time within which to file a demurrer. Pursuant to this leave he filed a demurrer to the petition for rehearing, and also to the second amended bill. One ground of demurrer which was urged against both the petition and the amended bill was that they both came too late, the court having, as contended, lost control over the cause by entering a final decree in vacation on the 18th day of May, 1915, and that the only recourse, if any, open to the complainants was by application to this court for an appeal. The contention of the complainants in this respect, on the other hand, was that as the decree of May 18, 1915, was a vacation decree, the court had control over it until after the next term, by virtue of the provision of section 3293 of the Code, giving the court "control over all proceedings in the office during

the preceding vacation." We are of opinion that this section has no application to vacation decrees entered, as this one was, pursuant to provisions of section 3427 of the Code. Such decrees are not within the contemplation of section 3293. We are further of opinion, however, that the court had the power to, and did in effect, treat the petition as a bill of review. It plainly sought to correct an error of law apparent upon the face of the record, and was, in substance, a bill of review, which is the appropriate proceeding for the correction of a final decree by the court in which it has been rendered.

On the 16th day of November, 1916, the court having considered the petition for rehearing, the second amended bill, and the objections and demurrers thereto, for reasons stated in a written opinion filed in the cause, "adjudged and ordered that the rehearing prayed for in said petition be, and the same is by this decree, denied, and it is further adjudged and ordered that the demurrer to said second amended bill be, and the same is by this decree, sustained, and this cause is ordered stricken from the docket at complainant's cost."

The chief assignments of error are that the court was wrong in holding (1) that the original and amended bills were multifarious, and (2) that no case for relief had been stated against Richard Yates, Jr. We think both of these assignments must be sustained. The original and amended bill clearly has a single, ultimate object in view, namely, to perfect the record title to the land which the appellants claimed they owned in fee simple. This purpose might have been accomplished in either of two ways: First, by the establishment of the partition deed between Matney and Yates, confirming the oral partition; second, by obtaining release deeds from all the heirs of Richard Yates. There was nothing inconsistent in attempting to accomplish this single purpose in either of the two ways which were indi-

65

cated in the bill. However, we have seen that the allega-
tion of the first amended bill as to the lost deed was such
as to cut the complainants off from any relief on that branch
of the case, and it need not be further considered. The
sole question before us, as we view this record, is whether
the complainants' pleading made out a case against Rich-
ard Yates, entitling them to a decree compelling him to
convey to them such title as he acquired from the heirs of
Richard Yates, Sr. In order to properly dispose of this
question it becomes necessary to state now somewhat more
fully than has heretofore appeared, the contract which com-
plainants allege they had with Richard Yates, Jr., and his
action thereunder. The substance of that matter, as al-
leged in all the bills, is that Yates, Jr., was one of the heirs
of Richard Yates, Sr.; that he offered to see the other heirs
and obtain releases from these heirs; that complainants em-
ployed him (verbally) in this capacity, upon his represen-
tation to them that, being one of the heirs, he could and
would do the work for less money than some other person
could do it; that he was to receive certain compensation
for his services; that each of the heirs at law were to re-
ceive a small consideration for executing the deed; that,
after accepting this employment, he secured the execution
of a deed to himself from the heirs at law of Richard Yates,
Sr., representing to some of them as an inducement for
signing the deed that he was doing the work for the com-
plainants, and would thereafter execute a deed to them for
the title; that after obtaining a deed from the Yates heirs,
he refused to make conveyance to complainants, although
they offered to pay him for his services, and to reimburse
him in full for all the cost and expense which he had in-
curred in connection with the matter.

The principal defenses to this branch of the case asserted
by Richard Yates, Jr., are: First, that none of the bills suffi-
ciently alleged the interest of the complainants in the land;

and second, that the complainants are undertaking to enforce a contract made between them and him which is not in writing and, therefore, invalid. We do not think either of these defenses is good. The bills all allege that the complainants are claiming the ownership of the 241-acre tract, and that as successors in title of the original owners, they have succeeded to a possession of the land which has continued ever since the oral partition in 1879. This shows a very substantial, and for the purposes of this case an entirely sufficient, interest in the land in controversy, and brings the case easily within the principle of constructive trusts as invoked by the complainants.

In a case where the principal, having no interest in the land to be purchased, makes a verbal contract with an agent to buy for him, and the latter purchases in his own name and with his own funds and then repudiates the agency and refuses to convey to the principal, the question whether the contract is within the statute of frauds and not enforceable against the agent, is one upon which there is a very great conflict of authority.

That such a contract is not within the statute and may be proved by parol evidence, see, among many other authorities, the following: 29 Am. & Eng. Enc. L. (2d ed.), p. 892; 15 *Id.* 1187, note 2; 20 Cyc. 234; 1 Mechem on Agency (2d ed.), section 1194, and note 18; *Rose* v. *Hayden,* 35 Kan. 106, 10 Pac. 554, 57 Am. Rep. 145; *Parker* v. *Catron,* 120 Ky. 145, 85 S. W. 740, 117 Am. St. Rep. 575, 577; *Johnson* v. *Hayward,* 74 Neb. 157, 103 N. W. 1058, 107 N. W. 384, 5 L. R. A. (N. S.) 112, 12 Ann. Cas. 800; note to *McCoy* v. *McCoy,* 102 Am. St. Rep. 237.

For the contrary and apparently the more prevalent view, see, among many others, the following authorities: 1 Mechem on Agency (2d ed.), section 1194, note 17; 15 Am. & Eng. Enc. L. (2d ed.), p. 1187, note 1; *Nash* v. *Jones,* 41

W. Va. 769, 24 S. E. 593; *Henderson* v. *Henrie,* 68 W. Va. 562, 71 S. E. 172, 34 L. R. A. (N. S.) 628, Ann. Cas. 1912 B, 318.

These citations, as to both sides of the question, might be multiplied indefinitely.

The Virginia cases (*Wellford* v. *Chancellor, Jackson* v. *Pleasanton, Va. Pocahontas C. Co.* v. *Lambert,* cited *infra*), while distinctly holding that an agent may not purchase land in his own name for the benefit of his principal and then refuse to convey the same in accordance with his contract, but in such case will be held as a constructive trustee, can hardly be said to settle conclusively the question as to the character of proof necessary to establish the agency, since in none of those cases was the statute of frauds relied upon as a defense. The cases of *Henderson* v. *Hudson,* 1 Munf. (15 Va.) 510; *Walker* v. *Herring,* 21 Gratt. (62 Va.) 678, 8 Am. Rep. 616, and *Burgwyn* v. *Jones,* 113 Va. 511, 75 S. E. 188, 41 L. R. A. (N. S.) 120, Ann. Cas. 1913 E, 564, relating to the purchase of lands by one party under a parol contract that another is to have an interest with him, and holding that such contracts are within the statute of frauds, must be regarded as tending, in principle, to support the view that a constructive trust in real estate cannot be established upon a parol contract of agency. The exact question, however, was not passed upon in any of those cases.

In *Yerby* v. *Grigsby,* 9 Leigh (36 Va.) 387, it was held that a person owning real estate might by parol authorize another to make a contract for the sale, and that under such authority the owner would be bound by a contract made in writing by the agent. It would seem, upon principle, that the converse of the proposition must be equally true.

Some of the authorities make a distinction between cases in which the principal is seeking to assert against third

parties his claim to the land purchased by the agent and cases in which the claim is, as here, directly against the agent, permitting parol evidence of the agency in the former and rejecting it in the latter class of cases. Again, very many of the authorities recognize a distinction between verbal contracts in which the agent agrees to buy in his own name and reconvey to the principal and those in which he is employed to buy and take the title in the first instance directly to the principal, upholding the latter and rejecting the former.

This confusion and conflict has arisen, as we think, from a failure to apply to every case the test of the very simple question, was the contract in its essence and effect one of agency, or was it one for the purchase of real estate? If it was the former, it creates a trust relation, is not within the statute of frauds, and can be established by parol; if the latter, the parties are to that extent dealing with each other as principals and the contract is within the statute and can only be established by such a writing as will meet the requirements thereof. This distinguishing principle is pointed out more or less clearly in a number of the cases cited above. To repeat at length the discussion thereof contained in even a very few of the leading cases would unduly and unreasonably prolong this opinion, and we content ourselves with the following brief extracts:

In *Rose* v. *Hayden*, 35 Kan. 106, 118, 10 Pac. 554, 563, 57 Am. Rep. 145, 155, in which the opinion goes quite fully into the authorities on both sides of the question, the court said: "The controlling question in this case is not whether the principal advanced the purchase-money or not, but it is whether in equity and good conscience the agent who in fact purchased the property with his own money in his own name, in violation of his agreement with his principal and in abuse of the confidence reposed in him by his principal,

can be allowed to retain the fruits of his perfidy. The weight of authority is, we think, that he cannot."

In *Johnson* v. *Hayward,* 74 Neb. 157, 103 N. W. 1058, 107 N. W. 384, 5 L. R. A. (N. S.) 112, 12 Ann. Cas. 800, a case in which, as in *Rose* v. *Hayden,* an agent employed under a parol contract purchased the land in his own name with his own money, the court said: "It seems to us that in the defendants' argument, as well as in the authorities cited in support of it, there is a failure to distinguish between those cases where an estate or interest in land, or some trust or power over or concerning lands, is one of the considerations of the contract, and is acquired as a direct result thereof, and those where such estate, interest, trust, or power is not such consideration, and is not acquired as a direct result of the contract, but which arises as a remote result of the contract and from an abuse of the relations thereby established. It is not claimed by the plaintiff that at the time he made his contract with Hayward he thereby acquired any title, legal or equitable, to the land, or that any trust or power over or concerning the land was thereby created. On the contrary, the most he claims for that contract is that it created between him and Hayward the relation of principal and agent. The land itself, or any interest or trust or power over and concerning the land, was no part of the consideration moving from either party to the other. The consideration which the plaintiff agreed to pay was the value of Hayward's service, and the consideration moving from Hayward was the service he undertook to render as the plaintiff's agent. That an oral contract creating an agency, although for the purchase or sale of real estate, is valid is clearly established by the authorities."

If this conclusion is correct, and we cannot doubt that it is, then there can be no difficulty at all about applying to the instant case the doctrine of constructive trusts. The

relationship of principal and agent should of course in all such cases be established by clear and convincing proof. In the present case the agency is admitted by the demurrer and must at this stage of the cause be regarded as a fact. The fact being established, the Virginia authorities plainly fix the status of Richard Yates, Jr., as that of a constructive trustee for Matney and Stinson, charged with the duty of conveying to them such title as he acquired from the other Yates heirs, upon their compliance as offered in the bill with the terms of the agency contract. See *Wellford* v. *Chancellor*, 5 Gratt. (46 Va.) 39; *Jackson* v. *Pleasanton*, 95 Va. 654, 657, 29 S. E. 680; *Va. Pocahontas C. Co.* v. *Lambert*, 107 Va. 368, 58 S. E. 561, 122 Am. St. Rep. 860, 13 Ann. Cas. 277; 1 Min. Real Prop., section 482.

There is even less difficulty in holding the agent as a trustee in the instant case than in the ordinary case of principal and agent, because, as we have seen, the appellants already had possession of the land under a claim of title which appears to have been recognized by Richard Yates, Jr., and which he used as an inducement with some of the heirs while holding himself out to them as the agent of the appellants. In so far as he held himself out in this capacity, the case is peculiarly within the influence of the decision of this court in *Va. Poca. Co.* v. *Lambert, supra*, in which Judge Buchanan, delivering the opinion said: "While the evidence is conflicting as to the representations made by the appellee in obtaining the conveyance from Mrs. Beavers and Cline and wife, it clearly appears from the whole testimony and from the circumstances surrounding the transaction that he made the impression upon the grantors that he was not purchasing for himself, but for the coal company, which claimed to be the owner of the land and was in possession thereof, and that they were induced to make the conveyance because of their belief that in so conveying they were curing defects in former conveyances

of the same land made by them. In other words, the record establishes the fact that the appellee secured the conveyance by causing his vendors to believe that it was made to cure defects in their former conveyances. Where a conveyance is procured under these circumstances, the grantee, under settled equitable principles, is held to be a mere trustee for the party really intended to be benefited by the grantor.''

And as to the entire interest acquired by Yates, as well from those heirs to whom he may have made no representation of his agency as from those to whom he did, the case is within the well established and generally recognized principle stated in 15 Am. & Eng. Enc. L. (2d ed.), p. 1188, as follows:

"Where the principal has a present interest in the land, and only employed the agent to purchase an adverse or outstanding title for the purpose of bolstering up or protecting the principal's own title, irrespective of whether the outstanding title was good or bad, the agent has been held a constructive trustee when he purchased the title in his own name, paying therefor with his own money." See also, *Larmon* v. *Knight,* 140 Ill. 232, 29 N. E. 1116, 33 Am. St. Rep. 229; *Id.* note p. 233; *Rollins* v. *Mitchell,* 52 Minn. 41, 53 N. W. 1020, 38 Am. St. Rep. 519; *Id.* note p. 526.

We are of opinion that each of the decrees which denied relief to complainants was erroneous. The original bill, as before indicated, was not multifarious, stated a single general purpose, which might have been accomplished in either of two ways, and ought to have been entertained upon the principle that it is the policy of the law to avoid a multiplicity of suits, and to reject the objection for multifariousness where there is no liability to injustice. (*Jordan* v. *Liggan,* 95 Va. 616, 618, 29 S. E. 330; *Seefried* v. *Clarke,* 113 Va. 365, 369, 74 S. E. 204.) Having, however, sustained the demurrer and entertained an amendment

which showed that the complainants were bound to fail in their proof upon the first branch of the case, it was again error to dismiss the bill for multifariousness, and more clearly so since its main purpose could then only be accomplished by a decree against Yates; and the court, in our opinion, ought to have overruled the demurrer as to him and treated as surplusage all the allegations relating to the lost deeds, in so far as any purpose was indicated in the amended bill to set them up (*Jordan* v. *Liggan, supra,* 95 Va. 619, 29 S. E. 330), or ought to have reserved to complainants in the vacation decree of May 18, 1915, the right to amend by striking out those allegations. Final decrees in vacation ought to guard against cutting off the opportunity for amendments. Not having done either of the things last above suggested, and having entertained the petition for rehearing and the amended bill at the next succeeding term, the proper course, in our opinion, would have been to grant the prayer of the petition (treating it as a bill of review) and to permit the amendment. The amendment was, indeed, permitted and the court considered the second amended bill, but sustained the demurrer and denied relief.

The decrees complained of will be reversed, the demurrers to the original and amended bills will be overruled, and the cause remanded to the lower court for further proceedings to be had therein not in conflict with the views expressed in this opinion.

*Reversed.*