**Richmond.**

SIMMONS v. KRAMER.

November 19th, 1891.

1. SPECIFIC PERFORMANCE—*Authority of agent.*—It is settled that in a case where plaintiff sues for specific execution of a purchase of land alleged to have been made by him from the agent of the owner, he must show, by evidence which is clear, competent, direct, and satisfactory, both the terms of the contract and the authority of the agent, or a ratification by the principal. *Blair* v. *Sheridan,* 86 Va. 527.

2. IDEM—*Case at bar.*—Upon the evidence in the record of this case; HELD:

> The authority of the agent did not extend to making a sale, but only to finding a purchaser, and specific execution could not be decreed.

Appeal from a decree of the hustings court of the city of Roanoke. Opinion states the case.

*W. R. Staples* and *Scott & Dupuy,* for appellant.

*Phlegar & Johnson, J. A. Watts, T. W. Miller,* for appellee.

LEWIS, P., delivered the opinion of the court.

This was a suit in the hustings court of Roanoke city for the specific performance of an alleged contract for the sale of real estate. The bill, which was filed by Simmons, the appellant here, alleges that on the 6th day of October, 1888, the defendant, Kramer, through his authorized agents, R. H. Gray

& Co., sold the three lots in question to the plaintiff for $10,000, on the terms of one-third cash, the balance on a credit of one and two years, payable in equal instalments, as evidenced by a written contract of that date, signed by R. H. Gray & Co., a copy of which is exhibited with the bill.

The defendant answered, denying that he had contracted to sell the property, or that he had authorized the firm of R. H. Gray & Co., or any one else, to do so for him.

Depositions were taken, and when the cause came on to be heard, the bill was dismissed by the decree complained of.

We are of opinion that there is no error in the decree. It is an established principle that, in cases like the present, to entitle the plaintiff to a decree for specific performance, the proof to establish the agency must be clear, certain, and specific. A bare preponderance of the evidence, it has been held, is not sufficient; but the proof must be so clear and distinct that a fair and candid person can see, without hesitation, that the alleged authority was given.

This principle was recognized in the recent case of *Blair* v. *Sheridan*, 86 Va. 527, in which case Judge Hinton, speaking for the court, observed that for the plaintiff to prevail in a case like the present he must "show by evidence which is clear, competent, direct, and satisfactory, both the terms of the contract and the authority of the agent, or a ratification by the principal." And in the same case it was also said that where an agent acts under a special or express authority, whether written or verbal, the party dealing with him is bound to know, at his peril, what the power of the agent is, and understand its legal effect, and that if the agent exceeds the boundary of his power, the act, as it concerns the principal, is void. See, also, *Davis* v. *Gordon*, 87 Va. 559.

In the present case the alleged authority of R. H. Gray & Co. was sought to be shown by the deposition of R. H. Gray and certain correspondence between the parties, which is filed with the record. In his deposition Gray testifies that his firm,

who are real estate agents at Roanoke, was authorized to sell the lots in question, a short while before the alleged sale by W. A. Kramer, the son and accredited agent and attorney of the defendant, F. C. Kramer (the latter being a resident of Carlisle, Pennsylvania), and that the authority thus given was afterwards ratified by the defendant. But this is distinctly denied by the Kramers in their depositions, and the documentary evidence relied on does not, in our opinion, when added to Gray's evidence, overcome the force of their denials.

The writing relied on in the bill to establish the agency to sell is the following letter from the defendant to R. H. Gray & Co., viz:

"CARLISLE, PA., Oct. 3d, '88.

" *R. H. Gray & Co.,*
     " *Roanoke, Va.:*

" GENTS,—Yours received, and I cannot accept your offer, but my price is at the present time ten thousand dollars for my lots on Salem avenue, one-third cash, balance one and two years, 6 per cent., secured by deed of trust on the ground. Will give you 2 per cent. commission. Awaiting a reply.
     " Respectfully yours,

" F. C. KRAMER."

Gray testifies that this letter was an answer to a letter previously addressed to the defendant by his firm, asking for authority to sell the lots in question; but the defendant denies having received any such letter. It is, obviously, however, an answer to a communication of some sort, as it begins with the words, " Yours received." But be that as it may, it cannot by any fair interpretation be construed as an authority to sell. At all events, rejecting a proposition and mentioning the price at which the defendant held the property, is not the clear and satisfactory evidence of such an agency which the rule above mentioned requires. And the same may be said of the words

"I will pay you 2 per cent. commission," which may have been as appropriately addressed to *a broker* as to an agent to sell. Nor do we perceive that the words "awaiting a reply" have any special significance as tending to support the theory of the appellant. On the contrary, if they have any significance at all, they rather indicate that the letter was intended as a proposition, to which a reply was expected, than as conferring authority to sell.

In *Grant* v. *Ede*, 85 Cal. 418, a letter to an agent, saying, "You stated you could get $30,000 for the place you occupy, and if you can, we will sell at that price, and allow you 2½ per cent. on said price," was held to authorize such agent to find a purchaser, *but not to sell*, and that a contract by such agent to sell conferred no rights on the purchaser as against the principal.

"The expression, 'I will sell,' or its equivalent, accompanied by a specification of terms, does not confer any authority on an agent to make a contract of sale; neither does a correspondence between the owner and agent concerning the property, price, and terms of sale confer any such authority." 1 Warvelle, Vendors, 212; *Bosseau* v. *O'Brien*, 4 Bis. 395.

Gray, in his deposition, says that it was agreed between young Kramer and himself that he (Gray) should sell for $9,000 cash, and that if he had an offer for less to report it. But Kramer testifies that the understanding was that *any* offer for the property should be telegraphed to his father by Gray, and that if his father then determined to sell, he would telegraph him (Gray) to sell. And this version of the matter seems probable; for afterwards, to-wit, on the 21st of September, 1888, Gray & Co. telegraphed the defendants as follows:

"Can we sell one lot, Salem avenue, to Campbell, three thousand dollars, third cash, balance one and two years. Answer."

To which the defendant replied :

" I will take $3,000 spot cash for one lot on Salem avenue, No. 91, clear of all expenses. If you have sale for same, answer as soon as possible."

It is contended that this conferred authority to sell. But it was, in fact, nothing more than giving the price at which the owner was willing to sell, and asking to be informed whether a purchaser could be found at that price. The question is, " Can we sell ? " and the answer is, " I will take," &c., which is very different, as we have seen, from conferring an authority to make a contract of sale. In other words, it gave authority to R. H. Gray & Co. to act as agents in finding a purchaser, with a reservation of the power on the part of the defendant to make the contract of sale, in the event an acceptable offer should be reported.

In short, we are of opinion, without going more fully into the case, that the appellant has not made out such a case as entitles him to the relief prayed for in the bill, and that the decree must be affirmed.

FAUNTLEROY, J., *dissented.*

DECREE AFFIRMED.