## Richmond

JOHN S. MORRIS, JR., ET AL.

V.

J. LEYBURN MOSBY, JR., ET AL.

Record No. 812047.

June 15, 1984.

Present: All the Justices.

518

*J. Michael Gamble (Cecil W. Taylor; Pendleton & Gamble; Martin, Taylor, Fralin, Freeman & Perrow*, on brief), for appellants.

*Royston Jester, III; Bevin Alexander, Jr. (Paul H. Coffey, Jr.; Jester, Jester & O'Keeffe; Edmunds, Williams, Robertson, Sackett, Baldwin & Graves*, on brief), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

This is an appeal from a decree ordering the purchasers of real property to specifically perform a sales contract and to pay certain damages.

J. Leyburn Mosby, Jr., filed a bill of complaint against John S. Morris, Jr.,[1] (John) and Richard C. Morris (Richard) seeking to have the Morrises perform a written contract in which they allegedly agreed, through their agent Barry W. Bosiger, to purchase certain real property owned by Mosby in the City of Lynchburg. After hearing the evidence *ore tenus*, the trial court ordered the Morrises to perform according to the contract and to pay certain expenses and damages resulting from their default.

The principal question is whether the trial court erred in decreeing specific performance. Two sub-issues must be decided before this question can be answered: (1) whether the doctrine of laches barred Mosby from seeking specific performance; and (2) whether Bosiger was acting as John's agent.

John and Richard were father and son who practiced pediatric medicine together in the City of Lynchburg. Bosiger was a real estate agent who had been a long-time friend of John's. John had been Bosiger's physician, and both doctors had attended Bosiger's children.

In 1979, both Morrises, accompanied by Bosiger, began looking for a suitable site for a new office building. They examined approximately 13 different properties, including Mosby's. They viewed Mosby's property on four or five occasions, and the doctors indicated an interest in purchasing it. Bosiger informed Mosby that two doctors, who wished to remain anonymous, were interested in purchasing his property.

On January 24, 1980, Bosiger met with the doctors at their offices, and the three men discussed the wording of a sales contract, while Bosiger made written notes. During this discussion, John objected to the driveway on the property which was used jointly by the subject property and another. He told Bosiger he would not agree to purchase Mosby's property if the driveway was used jointly.

Bosiger went to his office where he prepared a typewritten sales contract from his notes. On the afternoon of the 24th, he returned to the doctors' offices with the proposed contract and a letter to be signed by Richard authorizing Bosiger to act as his agent. Bosiger did not request an authorization by John. He testified that he knew John would not be at the office that afternoon and he had to

---

[1] It has been represented to the court that John S. Morris, Jr., died while this appeal was pending. The appeal, however, does not abate. Code § 8.01-20.

act quickly because Mosby had another offer for the property. Richard signed the authorization, and Bosiger, acting as agent for both doctors, executed the sales contract with Mosby later the same afternoon.

The contract failed to contain a covenant eliminating the common driveway, and Bosiger had the contract retyped to include such a provision. Mosby and Bosiger re-executed the contract, either on the afternoon of January 24 or the following morning.

The contract provided that purchase of the property was contingent upon the doctors' obtaining an Industrial Development loan. The doctors discussed the loan with a banker who informed them that Richard, alone, could not qualify for the loan. At the banker's suggestion, Richard and Bosiger conferred with attorneys experienced in issuing Industrial Development bonds. The bank allocated $300,000 for the loan.

John denied ever expressly authorizing Bosiger to act for him. He admitted, however, that he had an interest in the property, he had loan discussions with the banker, and he talked to a pharmacist about locating a drugstore in a portion of their proposed office building. He testified that he decided not to purchase the property when his financial consultant advised him against it.

Richard's attorney notified Mosby by letter dated May 30, 1980, that Richard could not perform the contract. Mosby filed this suit on October 23, 1980.

We first address the laches issue. When a trial court considers the defense of laches, it does not apply an absolute rule such as a statute of limitations, but instead, the court examines each case in light of the particular circumstances. *Bartsch* v. *Bartsch*, 204 Va. 462, 468, 132 S.E.2d 416, 420 (1963). Therefore, whether under the circumstances of a given case a claim is barred by laches is primarily a decision resting within the discretion of the trial court. *Burnett* v. *New York Central Railroad Company*, 380 U.S. 424, 435 (1965); *Gardner* v. *Panama R. Co.*, 342 U.S. 29, 30-31 (1951). Absent an abuse of discretion, its decision will not be disturbed on appeal.

Laches will apply in a specific performance suit only if the delay is accompanied by facts and circumstances tending to show the claimant's intention to abandon the contract. Additionally, the claimant's delay must be unreasonable and prejudicial to the other party. *Hamilton* v. *Newbold*, 154 Va. 345, 351, 153 S.E. 681, 682 (1930). Further, the burden of proving laches is upon the party

asserting the defense. *Pittman* v. *Pittman*, 208 Va. 476, 479, 158 S.E.2d 746, 749 (1968).

Less than five months expired between the time Mosby learned of the breach and filed suit. Nothing in the record suggests that Mosby, by his actions or words, had abandoned the contract. Instead, he placed his claim with his attorney, who, according to Mosby, needed time to research. Moreover, there is nothing to show that the delay was either unreasonable or injurious to the Morrises. Consequently, we cannot say the trial court abused its discretion in rejecting the defense of laches.

We next consider whether Bosiger was authorized to act as John's agent for the purchase of Mosby's property. It is well established that a contract between principal and agent for the sale or purchase of real property need not be in writing. *Matney* v. *Yates*, 121 Va. 506, 518-19, 93 S.E. 694, 697-98 (1917). *See also H-B Partnership* v. *Wimmer*, 220 Va. 176, 179, 257 S.E.2d 770, 773 (1979). Regardless of whether the contract establishing agency is oral or written, it must be proved by clear and convincing evidence. *Raney* v. *Barnes Lumber Corp.*, 195 Va. 956, 967, 81 S.E.2d 578, 585 (1954); *Simmons* v. *Kramer*, 88 Va. 411, 412, 13 S.E. 902, 903 (1891).

When a trial court hears evidence *ore tenus*, its decree is entitled to the same weight as a jury verdict, and a reviewing court is bound by the trial court's findings of fact unless they are plainly wrong or without evidence to support them. *Burns* v. *Winchester Hosp.*, 225 Va. 545, 550, 303 S.E.2d 908, 911 (1983). Moreover, the prevailing party at trial is entitled to have the evidence and all reasonable inferences fairly deduced therefrom viewed in the light most favorable to him. *Mullins* v. *Greer*, 226 Va. 587, 588, 311 S.E.2d 110, 111 (1984).

Guided by these principles, we must determine whether the evidence is sufficient to support the court's finding that Bosiger was John's agent. We conclude that it is.

John and Bosiger were close, long-time friends. John helped select the Mosby property, and he actively participated in the conference with Bosiger when the terms and conditions of the contract were formulated. He observed Bosiger document the conclusions reached during that conference. John successfully insisted on a provision in the contract eliminating the jointly-used driveway. He knew Bosiger intended to type the contract and return with it to the Morrises' offices later the same day, and he

advised Bosiger that he would not be present, but Richard would be. John knew that it was important for them to act quickly because Mosby had received another offer to purchase the property.

Moreover, John had a close familial and professional relationship with Richard. It is undisputed that Richard authorized Bosiger to act for him. The venture was never Richard's alone, but was John's and Richard's together. Clearly, the trial court reasonably could infer that John was at all times aware of Richard's and Bosiger's actions. Indeed, this conclusion is inescapable.

Viewing the evidence and all of its reasonable inferences in the light most favorable to Mosby, we cannot say that the finding that Bosiger was John's agent under an oral contract is plainly wrong or without evidence to support it. Consequently, the portion of the decree ordering specific performance will be affirmed.

The remaining issue is whether the trial court erred in awarding Mosby damages of $23,800 for interest.[2] The sales contract did not expressly address the subject of interest. It provided, however, that if either party defaulted under the contract, he would be liable for "any expenses incurred by the non-defaulting party, including attorneys' fees, in connection with this transaction and the enforcement of such Contract."

Mosby bases his interest claim on the fact that he was required to pay interest during the construction of his home which he would not have paid had the sale to the Morrises closed at the agreed time. He contends that this interest expense resulted from the Morrises' breach of contract.

There are two broad categories of damages which may arise out of a breach of contract, direct (or general) damages and consequential (or special) damages. Direct damages are those which naturally flow from the breach. Consequential damages arise from the intervention of special circumstances not ordinarily predictable. *Roanoke Hospital* v. *Doyle and Russell*, 215 Va. 796, 801, 214 S.E.2d 155, 160 (1975). Consequential damages may be recovered only if the special circumstances were within the contemplation of both parties executing the contract. Moreover, generally the contemplation must exist at the time of execution. *Id.* at 801-02, 214 S.E.2d at 160.

---

[2] The Morrises· also contended the trial court erred in requiring them to pay Bosiger's real estate commission. At oral argument, however, both Mosby and Bosiger conceded that this was Mosby's obligation because specific performance was decreed. Therefore, we will not address this issue.

█ Because Mosby's interest claim does not flow naturally or ordinarily from the contract, it is a claim for consequential damages. The record does not disclose that this damage was ever contemplated by the parties in the event of a breach. Thus, we conclude that the trial court erred in awarding these damages.

█ Mosby, however, is entitled to judgment interest. Code § 6.1-330.10. Our mandate shall allow such interest, using the applicable rates prescribed from time to time by Code § 6.1-330.10 since the entry of the decree.

Accordingly, the judgment of the trial court will be modified and affirmed as modified.

*Modified and affirmed.*