## CIRCUIT COURT OF THE CITY OF STAUNTON

Sovran Bank, N.A.

    v.

Arresta B. Jackson et al.

January 8, 1988

By JUDGE DUNCAN M. BYRD, JR.

The uncontested relevant facts which bring this matter to the Court are as follows:

By an agreement dated December 5, 1967, John M. Jackson established an inter vivos unfunded trust with First & Merchants National Bank as Trustee pursuant to Section 64.1-73 of the Code of Virginia. A copy of the Trust was attached to the petition filed in this cause. Sovran Bank, N.A. is the successor by merger to First & Merchants National Bank and administers the Trust as Trustee from its office in the City of Staunton, Virginia. John N. Jackson died on June 20, 1971. He was survived by his wife, Arresta B. Jackson, and his children, Jane Jackson Smith, Diane Jackson Porter, Joseph M. Jackson, and John M. Jackson. Under Article V of the Will of John M. Jackson, his entire residuary estate passed to the Trust. One of the items passing to the Trust by reason of the residuary clause of the will of John M. Jackson was a parcel of real estate located in Augusta County, Virginia, consisting of

approximately 43.94 acres and known by current tax map numbering as Parcel 45-28 (the Land).

The Trust provides for an allocation of its assets between a marital trust and a family trust. The land was allocated to the family trust. The pertinent provisions of the family trust with respect to the distribution of benefits are as follows:

1. The Trustee shall pay to the Trustor's wife and to the Trustor's children who are under the age of twenty-five years, or who are for any reason in need of assistance, so much of the income and principal as the Trustee from time to time determines to be required in addition to the respective incomes and other means of support from all other sources known to the Trustee, for the reasonable support, comfort, and medical care of the Trustor's wife and reasonable support, comfort, education (including college and medical care of the Trustor's children), adding any excess income to principal at the discretion of the Trustee. The Trustee may pay the same to or use it for the benefit of one or more of them to the possible exclusion of one or more of them, and may completely exhaust the principal, Trustor's concern being primarily for the support, comfort and medical care of his wife, the support, comfort and education and medical care of his children under the age of twenty-five years, and the assistance of any child who may be in need because of accident, illness or other misfortune. Provided, however, that no payment of principal of the Family Trust shall be made to or for the benefit of the Trustor's wife, so long as any portion of the Marital Trust, consisting of cash or other assets deemed by the Trustee to be readily saleable, shall remain in the hands of the Trustee.

The Trust Agreement contains the following provision with respect to the sale of its assets:

The Trustee shall not make sale of any real estate held hereunder without the written

approval of the Trustor's wife, if living and competent and if the Trustor's wife is not living or not competent at the time of such sale, then the Trustee shall obtain instead the written consent of such of the then living children of the Trustor as are over twenty-one (21) years of age and competent.

Arresta B. Jackson, wife of John N. Jackson, and the principal beneficiary of the Trust, under the existing circumstances, cannot receive regular support, comfort and medical care as contemplated by the Trust without regular payments to her from the Trust. There are no saleable assets held under the Trust except for the land and the farm equipment for which the Trust has received an offer of $750.00. In addition, the Trust is in default in the note in the principal amount of $17,141.80 to Sovran Bank, N.A. and has incurred an overdraft in its checking account.

Plaintiff's Memorandum, page 2-4 (March 30, 1987).

Arresta B. Jackson suffers from Alzheimer's disease and has been totally incompetent since sometime in 1983. Since that time, she has been cared for primarily by her daughter, Diane Porter.

The Plaintiff's Petition seeks aid and guidance of the Court with respect to the sale of the remaining real estate contained in the Trust. The Defendants, in their Cross-Bill, allege negligence and mismanagement and seek damages.

The issue presented by the Plaintiff's Petition is whether or not a court of equity has the power to order the sale of land, notwithstanding the express provisions of the Trust to the contrary and the lack of consent of the Trust's beneficiaries. Clearly, this issue must be answered in the affirmative.

The general principals of law applicable to this case are best stated in Section 167 (1) of *Restatement of the Law* 2d, *Trusts* which provides as follows:

> The Court will direct or permit the Trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him in compliance would defeat or substantially impair the accomplishment of the purposes of the Trust; and in such case, if necessary to carry out the purposes of the trust, the Court may direct or permit the Trustee to do acts which are not authorized or are forbidden by the terms of the Trust.

*Id.* at page 6.

The clear general intention of the grantor of the Trust was to provide for the "support, comfort and medical care of the Trustor's wife and support, comfort and education of the Trustor's children under twenty-five." Clearly a Court of equity has inherent power and authority to order the sale of trust assets over an affirmative prohibition of the trust to the contrary when failure to do so would frustrate the purpose of the trust and the intention of the Trustor. *Restatement, Id.; Patterson v. Horsley,* 70 Va. (29 Gratt.) 263 (1877); *Wachovia Bank & Trust Company v. Johnson,* 269 N.C. 701, 153 S.E.2d 449 (1967).

In the Court's view, such is the case at bar. However, as counsel for Defendant, John N. Jackson, Jr., points out, notwithstanding the power of the Court to order or grant the power of sale, the issue remains as to whether or not it should do so. (Memorandum of John N. Jackson, Jr., April 29, 1987, page 1). In other words, a successful Cross-Bill by the Defendants may render the issue of sale moot.

Turning to the Cross-Bills. There are several areas of inquiry related to the allegations of mismanagement which the Court will address in sequence.

## I. *Excessive Commissions and Fees*

The first of these issues which Sovran Bank has admitted concerns excessive commissions and fees charged by the Trustee.

The excessive commissions resulted principally from real estate valuation errors during the life of the Trust. As stated, the Trustee has acknowledged this error and

has recomputed the commissions and reimbursed the trust in excess of $7,000.00 with the result that the overdraft has been eliminated and the past due real estate taxes have been paid on the trustee real estate. The Court finds it somewhat ironic that in spite of the fact that the aforesaid reimbursement eliminated the overdraft, the Trust seeks to recover $5,250.35 in interest on overdrafts. The court has reviewed the depositions of Garland Stager and Plaintiff's Exhibits 2 - 24. Notwithstanding this, the Court reaches the conclusion that "but for" the overcharged commissions, the overdrafts would not or should not have existed. Therefore, the request for the overdraft interest should be denied.

II. *Cattle Sale*

The vast majority of evidence and argument on the Cross-Bills has centered around the sale of livestock. Sovran Bank relies heavily upon the defense of laches. As stated by the Plaintiff, they can demonstrate extensive prejudice resulting from the delay of some fifteen years in asserting this claim.

> Possibly the greatest prejudice suffered by the Trustee is the loss of its right to recover damages from Ownby Auction and Realty Company, Inc., if this Court determines that the auction was negligently conducted. In conducting the auction, Ownby Auction Company agreed to perform a "full-service type operation" and was responsible for all advertising and promotion. If the advertising, promotion, or any other aspect of the auction was negligently conducted, and Sovran Bank incurred damages as a result, then Sovran Bank would unquestionably have a cause of action against the auction company. However, because the Defendants have delayed bringing this action until fifteen years after the auction occurred, Sovran Bank is now without any remedy against the auction company if this court were to award damages to the Defendants. All contractual rights which the Plaintiff had under its agreement with the auction company have long

since been barred by the applicable statute of limitation. . . . The current president of Ownby Auction Company testified that all records pertaining to the Jackson cattle sale were routinely destroyed by the company in 1982 at the advice of counsel. Consequently, this Court must now rely primarily upon individuals to recall specific · details about a single event which occurred over fifteen years ago. For the one individual most greatly involved in conducting the auction, Mr. Hugh Ownby, this is a complete impossibility because he suffered a stroke in 1978 and lost substantially all of his memory as a result. Similarly, Mrs. Jackson, the Co-Executor of the estate and active participant in the livestock sale, is unable to testify due to Alzheimer's disease.

Plaintiff Sovran Bank's Response to the Memoranda of Facts and Law submitted by the Defendants, page 7 - 9.

It is important to point out in addition that the aforesaid factors became even more important in light of the fact that there is *no* issue that the decision to liquidate the dairy herd was improper nor that the decision to select Ownby Auction Company as agent to conduct the sale was in *any way* improper.

In the Court's view, the facts in this case would sustain a plea of laches generally, but the law appears contrary as applied to an express trust such as the one at issue. The *general* rule as applied to express trust and urged by the Defendants in this instance is "that so long as there has been no denial or repudiation of an express and continuing trust, such as we have here, neither the Statute of Limitations nor laches will constitute a bar to an account or other proper relief to which the cestui que trust is entitled." *Broaddus v. Gresham*, 181 Va. 725, 734 (1943); 19 M.J., *Trusts and Trustees*, Section 113.

A review of the law and applicable authorities reveal that this rule is not an absolute rule. For example, in the case relied heavily upon by the Plaintiffs, *Redford v. Clarke*, 100 Va. 115, 40 S.E. 630 (1902), the Court cited the rule with regard to the statute of limitations,

but they denied relief on the basis of laches. The basis or background of the rule appears to be:

> That if a voluntary trustee does not repudiate the trust, but continues to act under and in harmony with it, the beneficiaries have no right of action against him, and the statute remains inoperative until the trust is repudiated or until the trust relation between the parties comes to an end. Until then, the possession of the trustee is the possession of his beneficiary, and hence his possession is not adverse to the equitable title of the latter, but is consistent with it. As long as the relation of trustee and cestui que trust is admitted to exist, and there is no assertion of adverse claim or ownership by the trustee, no refusal on demand to comply with the terms of the trust, and no repudiation or disavowal of the trust, no cause of action rests in the cestui que trust. The cause of action arises when and only when there has been some assertion of adverse claim or ownership, or a refusal to comply upon demand, or a disavowal or repudiation of the trust.

76 Am. Jur. 2d *Trusts*, Section 589. "Express trusts."

In the Court's view, this rationale is clearly distinguishable from the case at bar. Here the issue is one of an allegation of "breach of trust" as opposed to a dispute concerning the trust property, duty to account or enforce the trust. In this regard, the general rule as stated in 76 Am. Jur. 2d, Section 596 is that:

> In the case of an express trust, a cestui que trust is entitled to rely upon the fidelity of the trustee. Laches does not apply until the lapse of time is great or until the active duties of the trustee are terminated except for turning over the trust property or funds to the beneficiaries, the claim of the trustee in respect to the trust estate is held adversely to the beneficiary, the trustee openly denied

or repudiates the trust or *commits acts in breach thereof*, or in hostility to, or fraud of, the beneficiaries, *and the beneficiary is notified, or is chargeable with constructive notice thereof, or is otherwise plainly put on guard against the trustee.* No laches exists until a reasonable time after a beneficiary is notified of a breach or other cause of suit against the trustee. Laches does exist, however, where suit is not commenced with such reasonable time.

With respect to the issue of whether or not there was a "breach of trust" with regard to the "cattle sale," the issue arises from a single non-continuing transaction, the material facts of which the defendants had actual or constructive knowledge of contemporaneous with the event. As counsel for the Plaintiff points out:

Mrs. Jackson, as Co-Executor, participated in the cattle sale. (T/T at 263). John Jackson, Jr., attended the sale and even culled the fifteen best show animals just before the auction began. (T/T at 189). In addition, several other family members attended the auction sale. (T/T at 176). The day after the cattle sale, a meeting was held with members of the family to discuss the auction. (T/T at 223-224).

Plaintiff Sovran Bank's Response to the Memoranda of Facts and Law Submitted by the Defendants, page 9.
In the recent case of *Morris v. Mosby*, 227 Va. 517, 317 S.E.2d 493 (1984), the Virginia Supreme Court stated:

When a trial court considers the defense of laches, it does not apply an absolute rule such as a statute of limitations, but instead, the court examines each case in light of the particular circumstances. Therefore, whether under the circumstances of a given case a claim is barred by laches is primarily a decision resting within the discretion of the trial

court. Absent an abuse of discretion, its decision will not be disturbed on appeal.

Applying this rule to the totality of the evidence, in the Court's opinion, the defense of laches should be sustained.

III. *Rental/Lease of Real Property*

The rules of liability of fiduciaries in Virginia is clear and concisely articulated in the case of *Powers v. Powers*, 174 Va. 164 (1939). There, the Court stated:

> The rule as to liability of a fiduciary in Virginia is founded upon the law of negligence. Judge Harrison, in his work, Wills and Administration, Vol. 1, p. 705, says: "The inquiry in every case in which it is sought to fix a liability upon a fiduciary is: 1. Did he act within the scope of his powers and duties? 2. Did he act in good faith? 3. Did he act with ordinary prudence?"

The rules have been codified as trustee negligence under Code of Virginia, 1950, as amended, Section 26-5, which states:

> If any fiduciary mentioned before in this chapter, or any agent or attorney at law, shall, by his negligence or improper conduct, lose any debt or other money he shall be charged with the principal of what is so lost, and interest thereon, in like manner as if he had received such principal.
> If any personal representative, guardian, curator, or committee shall pay any debt, the recovery of which could be prevented by reason by illegality of consideration, lapse of time, or otherwise, knowing the facts by which the same could be so prevented, no credit shall be allowed him therefore.

or under the Virginia "Prudent Man" statute found at Code of Virginia, 1950, as amended, Section 26-45.1 which states:

> Except with respect to the securities described in Section 26-40, in acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for the benefit of another, an executor, administrator, trustee or other fiduciary, both individual and corporate, *shall exercise the judgment of case under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs,* not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. (Emphasis added.)

The court will not recite the evidence concerning this issue because the facts are, for the most part, not disputed. The Court has reviewed the evidence and arguments of counsel in light of the aforesaid principals of law and is of the opinion that the evidence fails to establish "mismanagement" in this regard.

## IV. *Failure to Sell to Hunter*

The claim of negligence for failure to sell the remaining real estate to Charles Hunter in late 1982/early 1983 is without merit. In support of this claim, the defendants rely heavily upon a memorandum from Ben Partlow dated December 10, 1982, which states the family's agreement to sell. The totality of the evidence reveals that this was merely a verbal understanding and that before the sale could be consummated that dissension and disagreement among the beneficiaries made it impossible for the Trustee to obtain the necessary "written consents." It is important to note that at this time, there was a significant question of Arresta Jackson's competency.

## V. *The $17,000.00 Loan to Trustee for Sovran Bank*

Article IX, Paragraph 13, of the Trustee agreement provides "the trustee may lend or advance to the fiduciary or fiduciaries having charge of the Trustor's probate estate (even though the Trustee hereunder and the said fiduciary or fiduciaries shall be one and the same persons) such portion or portions of this fund as the trustee in its sole and uncontrolled discretion shall think advisable, and such loans and advances may be made upon such terms and conditions as may be agreed upon by the Trustee and said fiduciary or fiduciaries."

Given the non-liquidity of the trust assets and the financial needs of the trust at the time in question, the Court finds no abuse of discretion with regard to the $17,000.00 loan.

## VI. *Loan/Distribution to Beneficiaries*

During the period of the trust in question, a number of requests for funds from the trust were made by various beneficiaries. The Cross-Complainants seek to have the court declare these distributions instead of loans. To do so would be contrary to the overwhelming weight of the evidence. The Trustee had discretion to make distributions to the beneficiaries and also to make loans to them. The clear and convincing evidence is that these advancements were loans. There is *no* evidence that the decision to make these advancement loans, as opposed to distributions, was an abuse of discretion on the part of the Trustee.

## VII. *Caretaker Duties of John Jackson, Jr.*

At the time of his father's death, John, Jr., resided in an old house on the farm which he was renovating. He also assisted his father in the operation of the dairy farm. He was therefore the logical person to act as caretaker of the farm on behalf of the Trustee.

John, Jr., alleges that part of the caretaker bargain was that he be able to purchase the property around his house for $13,000.00 and because his sisters reneged, he should be able to surcharge his caretaker fees.

The agreement did not contemplate as a condition the sale of the land to John, Jr. Mr. Partlow testified, and recorded in a September, 1975, letter (Plaintiff's Exhibit 2-7 to Partlow Deposition) that "John Jackson, the son, was permitted to continue living in this house, rent free, provided he looked after keeping the pastures mowed and managed for us the rental of the farm land and some horse stalls located in a barn behind his home." (Partlow Deposition at 19). Further in the body of the 1975 letter, Partlow wrote:

> John Jackson has now reached the point that he needs to enlarge his motorcycle shop and would like to obtain a Harley-Davidson franchise. We have advised John Jackson that he cannot enlarge his operation any further on the estate property, and he has, in rebuttal, requested that we sell to him the portion of the property on which the home and shop is located.

Plaintiff Sovran Bank's Response to the Memoranda of Facts and Law submitted by the Defendants, page 61, 62, and 63.

It is clear from the evidence that the oral caretaker agreement was prior to and had nothing to do with the later agreement whereby John, Jr., was to purchase 4.5 acres for $13,000.00.

The so-called caretaker agreement has been fully performed, and John, Jr.'s claims for compensation and expenses are without merit and time barred.

VIII. *Purchase of 4.5 Acres by John N. Jackson, Jr.*

John, Jr., had a written contract to purchase 4.5 acres from the trust for $13,000.00. Subsequently, his sisters withdrew their consent claiming duress. Thereafter, the sisters consented to a sale at $25,000.00 which was consummated. John, Jr., seeks reimbursement from the Trustee for the difference ($12,000.00).

As stated in Sovran Bank's response to Memoranda of Facts and Law submitted by the Defendants, at page 63:

> The Trustee did not block or oppose the sale of the realty to John, Jr. . . . For some reason beyond the knowledge of the Plaintiff, John never filed a Bill for Specific Performance to enforce the written agreement to sell him the land. This was *his* injury and *his* remedy, not that of the Trustee. The Trustee was a mere stakeholder, and as long as the realty remained in the Trust, it was not diminished or injured. . . . The Trustee was not negligent in this transaction.

The Court finds no basis for liability upon the Trustee in this regard.

## CONCLUSION

For the reasons stated herein, the relief requested in the respective Cross-Bills should be denied, and the relief requested in the Plaintiff's Petition granted except as modified herein.