STANLEY DANBURG

V.

CARL O. KEIL, ET AL.

Record No. 850398

March 4, 1988

Present: All the Justices

*Sidney H. Kirstein (McRorie, Kirstein, McMahon & Gay*, on brief), for appellant.
*Laurence P. Morin* for appellees.

COMPTON, J., delivered the opinion of the Court.

In this suit for specific performance of a contract for the sale of real estate, we limited the issues on appeal to consider whether certain items of damage claimed by the prospective purchaser were recoverable as "expenses" under the contract.

In October 1983, appellant Stanley Danburg agreed to purchase and appellees Carl O. Keil and Caroline Keil, his wife, agreed to sell approximately six acres of land and a dwelling, known as "Boxwood Lawn," in Bedford County. The agreed price was $240,000, closing to occur within 12 months from the date of the contract or sooner if the purchaser sold his existing residence.

In the Spring of 1984, a disagreement arose among the parties and the sellers filed this suit for specific performance against Danburg in October 1984. The Keils alleged that the parties executed a written contract on October 1, 1983 in which the Keils agreed to convey the property and improvements to Danburg. The sellers further alleged that by letter dated October 5, 1983, Danburg was granted "permission" to perform certain work on the premises prior to closing "for his own benefit and purposes." The sellers also alleged that Danburg and his agents subsequently entered the premises, commenced certain work, and made alterations to the landscaping and structures outside the Keils' house. As a result, the Keils alleged, Danburg caused damage to the

premises and diminished the value of the property. Alleging they were ready, willing, and able to comply with the contract and convey title to Danburg, the Keils asserted Danburg refused to close the transaction. The sellers asked the court to require Danburg to perform the contract and to pay damages, attorney's fees, and costs.

In responsive pleadings, including a cross-bill, Danburg admitted he declined to purchase the property and asserted that the sellers breached the contract. In addition, he charged the Keils with fraud and misrepresentation. Additionally, Danburg alleged that the sellers' wrongful conduct caused him to suffer "thousands of dollars worth of shrubbery and relocation expenses," for which he sought monetary damages, together with attorney's fees and costs for the sellers' breach of contract.

The trial court directed that certain issues out of chancery be tried by a jury. Code § 8.01-336(E). Following a trial extending over three days in January 1985, the jury found that the sellers breached the contract, that Danburg did not breach the contract, that the sellers' breach was not waived by Danburg, and that the sellers were not guilty of fraud or misrepresentation.

In the final decree, the chancellor approved and adopted the jury's findings. Accordingly, the court denied the sellers' request for specific performance, dismissed the cross-bill for damages based on fraud and misrepresentation, and awarded Danburg judgment against the sellers in the amount of $5,362.45 for attorney's fees, expert witnesses' fees, court reporting fees, and court costs. In addition, the court determined that funds expended by Danburg for improvements and alterations of the property were not "expenses" within the meaning of the contract and the contemplation of the parties. Therefore, the court denied Danburg's claim for those items which amounted to $11,213.45. We limited the appeal awarded Danburg to consideration of the correctness of the trial court's ruling on "expenses."

The written agreement of the parties consisted of two documents. First, on October 1, the parties executed a preprinted, form real estate purchase contract which had been furnished by a realtor involved in the transaction. As pertinent here, that document provided as follows, with the language at issue italicized:

"8. Seller and Purchaser agree the Realtor was the sole procuring cause of this Contract of Purchase, and Seller

agrees to pay Realtor for services rendered a cash fee of six percent of the purchase price. *If either Seller or Purchaser defaults under this contract of Purchase, such defaulting party shall be liable for* the cash fee of Realtor and *any expenses incurred by the non-defaulting party, including attorneys' fees, in connection with this transaction and the enforcement of such Contract.*"

Second, on October 5, the parties signed a typewritten letter of that date prepared by Danburg. Addressed to the sellers, the letter stated:

"I would like permission to do certain work on the outside of your house at the present time prior to our closing. The items I have in mind are as follows:

1. Fencing the area behind the house.
2. Converting the apple orchard to pasture, plowing the ground within the fenced area and planting grass.
3. Building a horse barn on the west side of the property near the old school house.
4. Take down the old apple shed and replace with a new vehicle shed.
5. Put in a circular drive in the front of the house which would be paved.
6. Landscape work - improving the condition of the landscape all over the property.
7. Pruning and feeding of the trees.

"With your permission, I would like to proceed with this work as soon as convenient."

The Keils signed the letter in blank spaces provided after the typed statement, "Accepted and Agreed To."

Shortly after the parties signed the letter, Danburg hired consultants and workmen who entered the Keils' property and commenced to perform the work mentioned in the letter. For example, the trees in the orchard were removed in preparation for converting the area to pasture for horses that Mrs. Danburg would bring from their former residence. Boxwood was thinned and pruned severely, many of the plants being excavated and transferred to other sites on the property. Clearing of flower beds and overgrown shrubbery was performed.

During the course of the landscaping, the controversy arose. It was triggered by Mrs. Keil's objection to use of the Keils' spring-fed domestic water supply on the shrubs transplanted by Danburg's workmen. Eventually, Mrs. Keil ordered the workmen from her property and stated to Danburg, in a heated telephone conversation on April 28, 1984, that, "I hereby withdraw my agreement to let you come on the property." Although Mrs. Keil later recanted and apologized to Danburg, the disagreement broadened.

Danburg concluded that the supply of water to the property apparently was inadequate for both domestic and farm purposes. He testified that he asked the Keils "three or four times" to prove to him that "they had adequate water, and they never did." Finally, Danburg consulted counsel who notified the sellers in July of 1984 that his client was rescinding the contract. This action was based on the Keils' alleged misrepresentation of the condition of the water system and the denial of access to the property to complete the landscaping.

In the ensuing litigation, Danburg claimed reimbursement as "expenses" under paragraph 8 of the sales agreement for not only expert witness fees, court reporting fees, and court costs, allowed by the chancellor, but also the sum expended for improvements and alterations to the property, denied by the court. This latter sum included payment for manual labor, heavy equipment rental, architectural consultation, pasture seeding, use of dump trucks and a backhoe, and professional landscape work.

The specific question on appeal, therefore, is whether the chancellor erred in determining that the latter items were not "expenses" within the meaning of the contract and the contemplation of the parties. We hold that the trial court correctly decided that issue.

In *Morris* v. *Mosby*, 227 Va. 517, 317 S.E.2d 493 (1984), we construed language in a real estate sales contract identical to the language at issue here. We held the trial court had erred in awarding interest to a seller who claimed he was required to pay interest during construction of a home which he would not have paid had the purchasers closed the transaction sued on in a timely manner.

We reviewed the two broad categories of damages which may arise from a breach of contract. We noted that direct, or general, damages are those which naturally or ordinarily flow

from the breach. Consequential, or special, damages "arise from the intervention of special circumstances not ordinarily predictable." *Id.* at 523, 317 S.E.2d at 497, *citing Roanoke Hospital v. Doyle and Russell*, 215 Va. 796, 801, 214 S.E.2d 155, 160 (1975). Consequential damages are compensable only if it is determined as a matter of fact that the special circumstances were within the contemplation of the contracting parties. *Id.* at 801, 214 S.E.2d at 160. In this context, "contemplation" includes that which was actually foreseen or reasonably foreseeable. *Id.* n.4.

■ In the present case, Danburg's claim for funds expended for improvements and alterations of the property do not flow naturally or ordinarily from the breach of this real estate sales contract. Thus, the claim is for consequential damages. We hold Danburg has failed to establish that recovery for the damages claimed was contemplated by the parties in the event of a breach of this contract.

■ The plain language of the contract demonstrates the invalidity of Danburg's claim. Paragraph 8 provides for liability upon the defaulting party for "any expenses incurred by the non-defaulting party, including attorneys' fees, in connection with this transaction and the enforcement of such Contract." Thus, the "expenses" must have been incurred not only "in connection with this transaction," but also in connection with "the enforcement of such Contract." This two-pronged requirement must be fulfilled for the defaulting parties to be liable. Arguably, property alterations and improvements may qualify as expenditures "in connection with this transaction." Nevertheless, it is clear that such expenditures were not incurred in this case in connection with "the enforcement of" this agreement. As the chancellor ruled, only witness, reporting, and court fees met the two-pronged contract test for recovery as "expenses."

And, there is nothing in the letter of October 5, or in the other circumstances of the case, to change the foregoing interpretation of the agreement or to show that the special circumstances present here were within contemplation of all the contracting parties. The letter, drafted by Danburg, made no reference to sanctions to be imposed upon the sellers in the event they withdrew "permission" for Danburg to perform his work on the property in advance of the passage of title. The letter made no reference to the term "expenses" as used in paragraph 8. We cannot say the chancellor erred in his implicit finding that the special circumstances were

not actually foreseen by the parties or reasonably foreseeable by them when the agreement was executed.*

Consequently, the final decree in this suit will be

*Affirmed.*

---

* There is no merit to Danburg's alternative argument that his out-of-pocket losses were recoverable as so-called "preparation expenses."