COURT OF APPEALS OF VIRGINIA

Present: Judges Friedman, Raphael and White
Argued at Richmond, Virginia

UNPUBLISHED

SCOTT P. STATON

v.      Record No. 0401-25-2

GWYN E. STATON

MEMORANDUM OPINION[*] BY
JUDGE KIMBERLEY SLAYTON WHITE
MARCH 3, 2026

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Claire G. Cardwell, Judge

Paul R. Mack (Saunders, Patterson & Mack, on briefs), for
appellant.

Meredith L. Yoder (Parker, Pollard, Wilton & Peaden P.C., on brief),
for appellee.

Simply put, this case involves a dispute among siblings over payments due to them, the

remedy sought by the court pleadings, and impact of the tender of the amount sued for just

before trial. Scott Staton alleged that his sister Gwyn Staton withheld money owed to him and

sued her for $9,562.40. In a pleading filed in circuit court, Scott sought the exact amount of

money he alleged was owed to him and nothing for additional consequential damages. In

addition, he sought punitive damages. Just prior to trial, Gwyn's attorney tendered to Scott's

attorney a check made payable to Scott in the amount of $9,562.40. Following the presentation

of Scott's case to the trial court, Gwyn's motion to strike was granted. Scott assigns error to the

granting of the motion. For the following reasons, we affirm the ruling of the trial court.

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

BACKGROUND

The appellant, Scott Staton, sued his sisters, Gwyn Staton, appellee, and Victoria Staton Ishee,[1] for conversion of payments related to the probate estate of their mother, Norma Staton. Norma Staton passed away on February 27, 2013. At the time of her death, she held a promissory note from Douglas and Sharon Williams in the principal amount of $122,500. After Norma's death, the note became an asset of her probate estate and was later administered to Scott, Gwyn, and Victoria.

In 2014, Gwyn and Victoria executed separate agreements allowing Scott to collect payments from the Williamses due under the note and to distribute one-third of their respective shares to them. Although not stated explicitly in the agreement, Scott would receive the monthly payments, cash them, and after six months, send the funds to his sisters in the form of a cashier's check. However, in 2017, without Scott's or Victoria's knowledge and contrary to their written agreements, Gwyn sent a letter to the Williamses asserting that she was the new representative of their mother's estate and instructed them to send all payments due under the note directly to her. Later, after not receiving any payments from the Williamses, Scott repeatedly questioned his sister about the payments. Gwyn finally admitted to Scott that the Williamses had been and would be sending payments to her.

Over the next four years, the Williamses sent forty payments totaling $28,687.20 to Gwyn. However, Gwyn deposited the note payments into her personal bank account instead of into the estate bank account. During that time, Gwyn made timely payments due to Victoria but never made any payments due to Scott. After Gwyn stepped down from collecting payments in 2021, Victoria collected funds and distributed the note payments to Gwyn and Scott promptly

_____

[1] Victoria was added as a party in the amended complaint as being a necessary party. However, Scott neither sought recovery from her in the trial court nor makes any claim against her in this Court.

until the Williams family entirely paid off the note in 2022. Nevertheless, even after stepping down from collecting payments, Gwyn refused to distribute Scott's shares that she continued to hold that were owed to him.

Scott then sued Gwyn for conversion of the note payments owed to him, which he calculated to equal $9,562.40. Afterwards, Gwyn filed a motion to include Victoria as a necessary party under the compulsory joinder rules of Virginia. The trial court agreed and thus joined her as a defendant.

In 2023, before trial, however, Gwyn's counsel tendered a check to Scott for $9,562.40. The check was accompanied by a letter stating it was for "all funds collected by Gwyn Staton from Sharon and Doug Williams between 2017 and 2021 in connection with a promissory note originally made payable to Norma Jean Staton." In 2024, Scott endorsed the check and tendered it to Saunders, Patterson & Mack, the law firm representing him.

During the bench trial, Scott presented evidence that Gwyn had converted $9,562.40 of his shares owed to him under the promissory note. Scott argued that while Gwyn's counsel did send him a check that equaled the amount she had allegedly converted from him, Gwyn did not make the payment. Instead, Scott asserted that because the money came from Gwyn's counsel's employer, the law firm of Parker, Pollard, Wilton & Peaden's operating account, not Gwyn's trust account, she never paid him the amount he alleged was converted.

Moreover, Scott asserted that he reserved his rights to sue Gwyn for conversion because when he received the check, he deposited it into his counsel's trust account. Scott argued that he never had access to the funds, as the check remained in the Saunders, Patterson & Mack trust account and could only be distributed to him by his attorney after the conclusion of the case. Hence, Scott argued he never had control, dominion, or custody of the funds.

He argued further that because Gwyn never paid Scott the funds, nor did he ever have control of the funds paid by Gwyn's law firm, that Gwyn still owed him the $9,562.40 in compensatory damages. According to Scott, because he was owed compensatory damages, he maintained a claim for punitive damages. Alternatively, Scott contended that he was entitled to punitive damages because he suffered consequential damages, as he could have invested the converted funds. Scott also requested attorney fees alleging that he spent around $80,000 in legal fees to recover the converted funds.

After Scott presented his evidence, Gwyn moved to strike it. Gwyn filed her motion to strike arguing that she had already paid Scott the amount he alleged she had converted, and since he did not plead any other damages, she asserted that he had no claim for additional compensatory or consequential damages. As a result, Gwyn contended that, without such damages, Scott was barred from seeking punitive damages. Gwyn also argued that she should not be required to pay Scott's attorney fees, as he does not qualify for any exception to the American Rule, which requires each party to bear their own legal expenses.

Following additional briefing by the parties on the issues raised in the motion to strike, the trial court granted Gwyn's motion to strike. In the final order, the trial court concluded that Scott's evidence established that Gwyn had converted his share of the note payments, totaling $9,562.40. The trial court also found that on November 10, 2023, Gwyn's counsel sent Scott a check for $9,562.40, and on February 7, 2024, Scott endorsed and tendered the check to the law firm Saunders, Patterson & Mack. According to the trial court, because Scott had given to the law firm the money Gwyn's counsel sent him, it found he had "negotiated" the check, thereby "bringing the $9,562.40 in funds under his care, custody, and control."

Further, the trial court concluded that because money is "fungible," the $9,562.40 check Gwyn's counsel sent to Scott before trial was considered the same property she had converted.

- 4 -

As a result, since Gwyn had paid Scott the money she had converted, and Scott had those funds under his control, "no reasonable fact finder could find that [Gwyn] is controlling the funds." Hence, by the time the parties reached trial, Scott had already received the funds Gwyn had converted. Therefore, the trial court could not award him compensatory damages for his conversion claim.

The trial court also found that Scott failed to plead any other claims or present any evidence to support other consequential damages resulting from Gwyn's conversion. Therefore, without compensatory or consequential damages, Scott was prohibited from receiving punitive damages. Likewise, the trial court agreed with Gwyn that Scott's case did not fit under an exception to the American Rule. Thus, each party must pay for their attorney fees. These rulings are the basis of Scott's appeal to this Court.

Following the trial court's ruling, Gwyn, by written motion requested that the trial court impose sanctions against Scott and award her attorney fees. By written order, the trial court denied the motion. This ruling is the basis for Gwyn's appeal by cross-error to this court.[2]

## ANALYSIS

I. Legal Standards and Application of Damages in Scott's Conversion Claim

"When reviewing a circuit court's decision on a motion to strike, we must 'review the evidence in the light most favorable to the non-moving party.'" *Egan v. Butler*, 290 Va. 62, 73 (2015) (quoting *Kiddell v. Labowitz*, 284 Va. 611, 629 (2012)). Therefore, "the non-moving party must be given 'the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom.'" *Id.* (quoting *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 281 (1989)).

---

[2] Gwyn did not designate cross-error until she did so in her brief to this Court.

Conversion is "[a]ny distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith." *Condo. Servs. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 574 (2011). "[A] plaintiff must prove two elements by a preponderance of the evidence: '(i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession.'" *Kirdassi v. White*, 84 Va. App. 260, 297 (2025) (quoting *Gorden v. Pete's Auto Serv. of Denbigh, Inc.*, 838 F. Supp. 2d 436, 440 (E.D. Va. 2012)).

"While proof of damages is not an element of conversion, 'the measure of damages, as a general rule, is the value of the property converted at the time and the place of conversion.'" *Id.* at 298 (quoting *Straley v. Fisher*, 176 Va. 163, 167 (1940)). Therefore, "profits dependent upon conjectural, speculative or estimated future bargains are not subject to recovery." *Straley*, 176 Va. at 167. Under Virginia law, there is a "well-established rule that a plaintiff has the burden to prove the amount of damages with reasonable certainty." *Est. of Taylor v. Flair Prop. Assocs.*, 248 Va. 410, 415 (1994). Thus, a plaintiff is not required to establish damages "with mathematical certainty." *Id.* at 413. Instead, "a plaintiff is required only to furnish evidence of sufficient facts to permit the trier of fact to make an intelligent and probable estimate of the damages sustained." *Id.*

In other words, for the tort of conversion, plaintiffs have the burden to plead compensatory damages, which "are those allowed as a recompense for loss or injury actually sustained." *Dillingham v. Hall*, 235 Va. 1, 3 (1988). However, "[w]hile there are exceptions to this general rule, the exceptions usually apply where such measure does not accord with the principle of just compensation for the loss sustained." *Straley*, 176 Va. at 167. For this exception to be applicable, the plaintiff must plead consequential damages that "arise from the

intervention of special circumstances not ordinarily predictable." *Danburg v. Keil*, 235 Va. 71, 76 (1988) (quoting *Morris v. Mobsy*, 227 Va. 517, 523 (1984)).

If the plaintiff in a conversion case does not plead damages with "reasonable certainty," Virginia courts are prohibited from awarding damages. *Est. of Taylor*, 248 Va. at 415. Indeed, the Virginia Supreme Court has "firmly established that no court can base its judgment or decree upon facts not alleged or upon a right which has not been pleaded and claimed." *Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp.*, 221 Va. 1139, 1141 (1981). "Pleadings are as essential as proof, and no relief should be granted that does not substantially accord with the case as made in the pleading." *Id.* (quoting *Bank of Giles County v. Mason*, 199 Va. 176, 180 (1957)). "The issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence." *Potts v. Mathieson Alkali Works*, 165 Va. 196, 207 (1935). Therefore, for conversion claims, a plaintiff who fails to plead any consequential damages is barred from receiving them.

Furthermore, when a plaintiff is not awarded compensatory damages, they are barred from receiving punitive damages. As the United States Supreme Court explained, "[c]ompensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.'" *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (quoting *Cooper Indus. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001)). "By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution." *Id.* The court has also emphasized that they "are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *Cooper Indus.*, 532 U.S. at 432 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)). Thus, under Virginia law, a plaintiff being awarded compensatory damages "is an indispensable predicate for an award of punitive damages, except

in actions for libel and slander." *Syed v. Zh Techs., Inc.*, 280 Va. 58, 74-75 (2010) (quoting *Gasque v. Mooers Motor Car Co.*, 227 Va. 154, 159 (1984)).

Here, even viewing the evidence in the light most favorable to Scott, the undisputed record shows that he received and negotiated the very funds he claims were converted. There is no factual dispute that on November 10, 2023, Gwyn's counsel sent Scott a letter which included a check for $9,562.40. The letter clearly states that the funds are not being offered as a settlement, nor does it indicate that Gwyn reserved any rights to demand the return of the payment. Instead, the record shows Scott received and accepted the check. Moreover, the record indicates that on February 7, 2024, Scott endorsed the check to the law firm Saunders, Patterson & Mack.

The $9,562.40 check issued to Scott on November 10, 2023, was made payable to him and was under his control by February 7, 2024, thereby establishing him as the "holder" of the check pursuant to Code § 8.3A-302. Under Code § 8.3A-104, the check Scott received is classified as a "negotiable instrument" since it constitutes an "order to pay a fixed amount of money" from Gwyn to Scott. Once Scott wrote on the back of the check, "pay to the Order of Saunders, Patterson [&] Mack," it is classified as a "negotiation" because he transferred it to another party thereby bringing the check "under his care, custody, and control." *See* Code § 8.3A-201.

Although Scott argues he never meant to negotiate and transfer the check, that is irrelevant. According to Code § 8.3A-204(a), an "endorsement" is defined as a signature "other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose" of negotiation. The statute further states that, "regardless of the intent of the signer, a signature and its accompanying words is an endorsement." Code § 8.3A-204(a). Therefore, regardless of Scott's intentions for the law firm

of Saunders, Patterson & Mack to hold his check, he legally endorsed the transfer by signing and writing on the check. Thus, as the holder of the check, regardless of his intentions, Scott fully endorsed its negotiation when he assigned the payment to the law firm of Saunders, Patterson & Mack.

As stated earlier, in conversion cases, the general rule for damages "is the value of the property converted at the time and the place of conversion." *Straley*, 176 Va. at 167. In a conversion action, Scott has the burden of pleading for damages with "reasonable certainty." *Estate of Taylor*, 248 Va. at 415. Throughout his complaint, Scott only pleaded for damages resulting from the conversion of $9,562.40, the same amount for which Gwyn had paid him for converting his shares on the promissory note. Because Scott received and accepted the $9,562.40 check from Gwyn, fully endorsed the check when it was negotiated, and subsequently transferred it to Saunders, Patterson & Mack, he thereby brought it into his control. Since Scott had already received, accepted, and had control of the $9,562.40 check from Gwyn, he failed to meet his burden of showing that he did not receive the funds that she had converted. Therefore, Scott had already received the damages owed to him before trial and thus cannot be awarded compensatory damages.

If the trial court awarded Scott an additional $9,562.40, while he has already received those funds from Gwyn, it would amount to a double recovery for the same injury. The Virginia Supreme Court, however, has repeatedly held that "[a] fundamental principle of damages is that a plaintiff may not receive a double recovery for a single injury." *Dominion Res., Inc. v. Alstom Power, Inc.*, 297 Va. 262, 270 (2019). Therefore, having already received the $9,562.40, Scott cannot recover it again without violating the prohibition against double recovery.

While Scott does not have any compensatory damages, he argues his case falls under the exceptions to the general rule of damages for conversion, because his economic loss "does not

accord with the principle of just compensation." *Straley*, 176 Va. at 167. Scott contends that he has suffered consequential damages, as he could have used the money for investments and spent around $80,000 to recover the converted funds. However, Scott never pleaded for any consequential damages related to the conversion, nor did he provide any evidence that Gwyn's conversion of his funds prevented him from investing those funds. Thus, Scott has "not established that any additional damage resulted from the conversion of the funds." *Nat'l Acceptance Co. v. Va. Cap. Bank*, 498 F. Supp. 1078, 1087 (E.D. Va. 1980). Under these circumstances, awarding damages to Scott "would require the Court to engage in speculation and conjecture and the law does not favor such recoveries." *Id.*

Since Scott does not have any compensatory or consequential damages, he is prohibited from receiving punitive damages. As stated earlier, under Virginia law, except in cases of slander or libel, plaintiffs must first be awarded compensatory damages before they can be awarded punitive damages. *Syed*, 280 Va. at 75. In this case, Scott did not receive either compensatory or consequential damages, and conversion does not constitute an exception to the requirement that compensatory damages are a prerequisite for the award of punitive damages. Thus, the trial court did not err when it held Scott was prohibited from receiving punitive damages.

II. Attorney Fees and the Application of the American Rule

"A trial court's decision to refuse attorneys' fees is reviewed for abuse of discretion." *Galiotos v. Galiotos*, 300 Va. 1, 12 (2021). "Virginia follows the American rule on attorney's fees, under which '[g]enerally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant.'" *Bolton v. McKinney*, 299 Va. 550, 554 (2021) (alteration in original) (quoting *REVI, LLC v. Chicago Title Ins. Co.*, 290 Va. 203, 213 (2015)). "The purpose of the rule is to 'avoid stifling

- 10 -

legitimate litigation by the threat of the specter of burdensome expenses being imposed on an unsuccessful party.'" *Id.* (quoting *Tonti v. Akbari*, 262 Va. 681, 685 (2001)).

Here, Scott's claims for attorney fees fall short of meeting his burden, and the trial court did not abuse its discretion in failing to award attorney fees to him. Scott has not argued any contractual or statutory provisions that entitled him to attorney fees, nor was he the prevailing litigant. While the Virginia Supreme Court has made exceptions to the American Rule by awarding attorney fees, Scott does not provide any legal precedent relevant to his case. As a result, the trial court refused to deviate from the well-established American Rule. Therefore, we find the trial court did not abuse its discretion when it declined to award Scott attorney fees.

III. Gwyn's Cross-Error

Gwyn asserts, on cross-error, that the trial court denied her the opportunity to put on evidence of sanctions against Scott and to award attorney fees based on those sanctions under Code § 8.01-271.1. Because the trial court erred, she asks us to remand the case to the trial court for an evidentiary hearing to determine whether sanctions are appropriate and, if so, the amount of attorney fees she is owed under Code § 8.01-271.1.

Following the trial court's ruling, Gwyn, by written motion, requested that the trial court impose sanctions against Scott and award her attorney fees. The written motion contained detailed descriptions and excerpts of testimony and evidence presented at trial. She included a list of litigation between the parties, as well as attorney fees incurred by her.

Gwyn specifically stated within her motion that it was framed "as a Motion for Reconsideration, subject to the requirements and limitations of Rule 4:15(d) . . . including the limitation that oral argument on this matter is only conducted at the request of the Court." Gwyn explicitly stated that she did "not intend to independently seek hearing dates from [the] Court

- 11 -

unless otherwise directed." Without hearing further evidence, as invited by Gwyn's motion, by written order, the trial court denied the motion.

This Court and our Supreme Court have held that a "party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." *Nelson v. Commonwealth*, 71 Va. App. 397, 403 (2020) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)). This doctrine prevents parties from engaging in behavior that has been described as "playing fast and loose" with the courts. *Id.* (quoting *Babcock & Wilcox v. Areva*, 292 Va. 165, 204 (2016)).

Gwyn now requests that we remand her motion for sanctions and attorney fees back to the trial court for an evidentiary hearing, a position contrary to the one she took in her motion before the trial court. She "took one position and now affirmatively assumes an inconsistent position." *Id.* at 404. She has approbated and reprobated. For that reason, we are prevented from considering her request on appeal.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*